**Charles Earl WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–97–317–CR.**

Court of Appeals of Texas,
Waco.

Aug. 26, 1998.

Rehearing Overruled Sept. 16, 1998.

John A. Kuchera, Waco, for appellant.

Thomas B. Sehon, Falls County District Attorney, Lyle V. Gripp, Assistant District Attorney, Marlin, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Charles Earl Williams was charged with two counts of aggravated assault and one count of endangering a child. A jury found Williams guilty of all three counts and also found that a deadly weapon had been used in the commission of all three offenses. Punishment was assessed by the jury at twenty years' confinement plus a $2,500 fine on both aggravated assault counts, plus two years' confinement and a $2,500 fine for endangering a child, his sentences to run concurrently. Williams appeals, presenting two issues for review. He first asks whether there is a fatal variance between the proof offered at trial and the indictment because the indictment named the child allegedly endangered as *Ricky Lee Brown*, but testimony revealed that he was actually *Ricky Lee Moore*. He also asks whether the omission of mandatory charge language in the punishment charge constitutes a denial of due process which necessitates a remand for a new punishment phase. We will affirm the judgment.

## FACTS

April 1, 1997, Williams went to Wal–Mart with his girlfriend, Tracy Brown, Ricky Lee Moore (Brown's son), and Mary Ann Hering. While shopping for clothing for Brown's children, Brown and Williams began to argue because Brown would not buy any clothing for Williams' son. They returned to the car which Hering was driving and Williams got in the back, while Brown and Moore sat in the passenger's seat. Williams displayed a gun, threatened Brown and Hering, and pulled the trigger on the gun, although the safety was in place. Brown went inside Wal–Mart and asked a clerk to call 9–1–1. Williams was arrested. Hoping for reconciliation, Brown refused to obey her subpoena to appear in court. She was brought under a writ of attachment and involuntarily testified as a State's witness.

## ARTICLE 21.07

Williams' first issue complains that there is a fatal variance in proof as to the alleged victim of child endangerment. Because the indictment alleged that Ricky Lee Brown had been endangered and the evidence at trial showed his name to actually be Ricky Lee Moore, Williams alleges that he should be acquitted. Evidence adduced at trial regarding the child's name showed that he was also known as Ricky Lee Brown.

Tracy Brown, the child's mother, was hostile to the prosecution. When asked whether Moore was also known as Ricky Lee Brown,

she answered "no." She also initially denied that it would be "fair" to say that somebody might assume his last name was Brown. She eventually conceded that one could assume his name was Brown because her name was Brown. Hering testified that the child was known as Ricky Lee Brown:

Q: What is [Williams'] girlfriend's son's name?

A: We call him—his nickname is Pooh.

Q: Is that also Ricky Lee Brown?

A: Yes.

■ Article 21.07 of the Code of Criminal Procedure controls whether a name is sufficiently alleged in the indictment. It states:

In alleging the name of the defendant, or of any other person necessary to be stated in the indictment, it shall be sufficient to state one or more of the initials of the given name and the surname. When a person is known by two or more names, it shall be sufficient to state either name. When the name of the person is unknown to the grand jury, that fact shall be stated, and if it be the accused, a reasonably accurate description of him shall be given in the indictment.

TEX.CODE CRIM. PROC. ANN. art. 21.07 (Vernon Supp.1998).[1] The name of the victim must be alleged in the charging instrument and proved beyond a reasonable doubt. *Blankenship v. State*, 785 S.W.2d 158, 159 (Tex. Crim.App.1990). When a person is known by two or more names, article 21.07 allows the State to allege either name in the indictment. *Id.* (citing *Little v. State*, 130 Tex.Crim. 603, 95 S.W.2d 141 (1936)). Article 21.07 requires only that the person be known by two names, not that he or she be "commonly" known by such names. *Id.* Because there was evidence that Ricky Lee Moore was also known as Ricky Lee Brown, the issue was raised and was properly left for the jury. *Blankenship*, 785 S.W.2d at 160; *Brown v. State*, 843

S.W.2d 709, 712 (Tex.App.—Dallas 1992, pet. ref'd).

■ Williams relies on our holding in *Scott v. State*, 905 S.W.2d 783 (Tex.App.—Waco 1995, pet. ref'd), to support his contention that an acquittal is necessary. In *Scott*, the majority stated:

The State argues that Roy Gann's testimony is sufficient to create a fact question for the jury to determine if he is also known as "Ray Gann." We reject this contention for two reasons. First, the sufficiency of the evidence is determined with reference to the jury charge. The charge requires the jury to find that a jailer named "Ray Gann" was assaulted; unlike *Blankenship*, nowhere in the charge is mention made of the possibility that Gann is known by another name. Thus, the jury was not authorized to convict Scott on this theory. Second, Gann's testimony that he had "been confused as Ray before" and that his name was "quite often mistaken" in publications does not establish that he was known, i.e., "generally recognized" by somebody, as "Ray Gann."

*Id.* at 786 (citations omitted.) We now disavow our holding in *Scott*. "A fair application of *Blankenship v. State*, 785 S.W.2d 158, 159–60 (Tex.Crim.App.1990), and article 21.07 of the Code of Criminal Procedure would authorize the jury to convict [Williams].... If evidence exists that the victim was known by the name alleged in the indictment, then the issue is raised and is properly left for the jury to determine." *Scott*, 905 S.W.2d at 786 (Vance, J., dissenting) (citing *Brown*, 843 S.W.2d at 712; *Stahley v. State*, 814 S.W.2d 415, 417 (Tex.App.—Dallas 1991, pet. ref'd)).[2] Issue one is overruled.

## OMISSION OF MANDATORY CHARGE LANGUAGE

Article 37.07, section 4(a) of the Code of Criminal Procedure mandates that certain instructions regarding parole eligibility be in

1. Except for replacing the term "Christian" with "given," article 21.07 did not change after the amendment of Article V, section 12 of the Texas Constitution (concerning defects in the charging instrument).

2. Also, *Scott* stated that the sufficiency of the evidence is determined with reference to the jury charge. The sufficiency of the evidence is now measured against the "hypothetically correct jury charge." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

the punishment charge if there has been a deadly weapon finding. A portion of that instruction was erroneously left out of the charge:

> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less, *without consideration of any good conduct time he may earn. If a Defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole.* Eligibility for parole does not guarantee that parole will be granted.[3]

■ Although submission of the parole instruction is mandatory, any error caused by the trial court's initial failure to include it in the charge was arguably waived by Williams' failure to object to its absence. *See Nixon v. State,* 940 S.W.2d 687, 691 (Tex.App.—El Paso 1996, pet. ref'd) (citing *Kinnamon v. State,* 791 S.W.2d 84, 96 (Tex.Crim.App. 1990)); *Ramos v. State,* 831 S.W.2d 10, 17 (Tex.App.—El Paso 1992, pet. ref'd).

■ Williams argues that this was an error of constitutional magnitude requiring automatic reversal. We disagree. The United States Constitution does not require a parole instruction in state courts. *Myres v. State,* 866 S.W.2d 673, 674 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (citing *O'Bryan v. Estelle,* 714 F.2d 365, 389 (5th Cir.1983)). No Texas case has held that omitting the instruction requires automatic reversal. *Id.* Thus, because Williams failed to object, we will not reverse unless he was egregiously harmed by the omission. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

■ A parole instruction may favor the State or the defendant. *Myres,* 866 S.W.2d at 674. The legislature intended for the instruction to increase the length of sentences set by juries. *Id.* (citing *Grigsby v. State,* 833 S.W.2d 573, 576 (Tex.App.—Dallas 1992, pet. ref'd)). However, if a jury learned from the instruction that the defendant would serve longer than expected, the jurors could be influenced to assess less time. *Id.*

As Williams points out, it is impossible to inquire into the jury's deliberations; thus, a finding of harm would be mere speculation. *Id.*

The court instructed the jury not to consider the extent to which good conduct time may be awarded to or forfeited by "this particular defendant." He further instructed the jury "not to consider the manner in which the parole law may be applied to this particular defendant." We presume that the jury followed the court's instructions and did not consider parole. *Id.* Williams claims that the jury may have imposed the maximum sentence because of a concern that he could earn good conduct time that would decrease the period of time which he will be required to serve in prison. This, however, assumes that the jury disregarded the court's instructions.

Williams has failed to show egregious harm. *Almanza,* 686 S.W.2d at 171. Issue two is overruled.

The judgment is affirmed.

---

**3.** Italics indicates portion which was omitted from Williams' punishment charge.