MEMORANDUM OPINION




No. 04-02-00281-CR



Joe MASON, III,


Appellant



v.



The STATE of Texas,


Appellee



From the Criminal District Court, Jefferson County, Texas 


Trial Court No. 85703


Honorable Charles D. Carver, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Sarah B. Duncan, Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: March 19, 2003


AFFIRMED AS REFORMED

 Joe Mason, III was convicted of murder and sentenced to seventy-five years in the Texas
Department of Criminal Justice - Institutional Division. Mason appeals, complaining the trial court
erred in failing to conduct a hearing on his motion for new trial, entering an affirmative finding of
a deadly weapon in the judgment, and failing to instruct the jury on the law applicable to parole
eligibility. He also argues he received ineffective assistance of counsel in connection with his
motion for new trial. We agree the judgment should be reformed to remove the deadly weapon
finding. However, we disagree with Mason's remaining points and affirm the judgment as reformed.

Factual and Procedural Background


 Jeremy McGill was killed after a night of partying with some friends. His charred remains
were found the next morning in his burned-out car. The autopsy report concluded death was due to
a traumatic injury to the head; however, the heat and charring obscured the injury and prevented
determination of what weapon caused the injury. The indictment alleged Mason caused McGill's
death "by a manner and means unknown to the Grand Jury." The State presented its case on the
theory that Mason shot McGill in the back of the head with a rifle and then poured gasoline in and
on the car and set it on fire. Mason presented no witnesses at the guilt/innocence stage. The jury
found him guilty of murder. During the punishment phase, Mason took the stand and testified that
he did in fact shoot McGill with a rifle, but that it was an accident. The jury sentenced Mason to
seventy-five years confinement. The trial court imposed sentence on March 8, 2002; and the judge
entered an affirmative finding of a deadly weapon in the judgment. 

 Mason's court-appointed trial counsel helped Mason prepare and file a pro se notice of
appeal on March 19, 2002. The same day, the trial court appointed appellate counsel to represent
Mason. On April 2, Mason filed a pro se motion for new trial, alleging his trial attorney provided
ineffective assistance of counsel at trial. The motion was overruled by operation of law.

Failure to Grant a Hearing on Motion for New Trial


 Mason first argues the trial court abused its discretion by failing to conduct an evidentiary
hearing on his pro se motion for new trial. We disagree.

 A motion for new trial must be verified or supported by affidavit. See Reyes v. State, 849
S.W.2d 812, 816 (Tex. Crim. App. 1993). An inmate may use the unsworn declaration provided in
Chapter 132 of the Texas Civil Practice and Remedies Code in lieu of a verification or affidavit.
Tex. Civ. Prac. & Rem. Code § 132.001 et seq. (Vernon 1997). Section 132.002 requires the
unsworn declaration "must be ... subscribed by the person making the declaration as true under
penalty of perjury." Id. § 132.002(2). Section 132.003 requires the declaration be substantially in
the form set forth therein. Id. § 132.003 ("I .... declare under penalty of perjury that the foregoing
is true and correct."). Mason's pro se motion for new trial is signed by him and is followed by the
following "Affidavit":

 On this the 30 day of March 2002 and pursuant to chapter 132 of the civil
practices and remedies code, I, Joe Mason III, #201792, being incarcerated in the
Jefferson County Jail, Jefferson County, Texas, declare under penalty of perjury that
the foregoing motion for new trial is true and correct to the best of my knowledge.

By including the phrase "to the best of my knowledge," the declaration does not attest to the
truthfulness of the facts. It is therefore not in substantial compliance with the form required by law
and not effective as a verification or affidavit. See id. §§ 132.002(2), 132.003. Because the motion
for new trial was insufficient as a matter of law, the trial court did not abuse its discretion by failing
to hold a hearing on the motion. Moreover, Mason was represented by appointed counsel when he
filed the pro se motion for new trial. The trial court therefore did not err in refusing to consider the
motion. See Turner v. State, 805 S.W.2d 423, 432 n.1 (Tex. Crim. App.), cert. denied, 502 U.S. 870
(1991) (refusing to consider pro se brief filed by represented appellant); Landers v. State, 550
S.W.2d 272, 280 (Tex. Crim. App. 1977) (holding no right to hybrid representation); Llano v. State,
16 S.W.3d 197, 198 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd) (holding trial court not required
to consider or hold hearing on pro se motion for new trial filed by represented defendant).

Ineffective Assistance of Counsel


 In his second point of error, Mason contends he was denied effective assistance of counsel
during the time in which a motion for new trial must be filed and presented and asks us to abate the
appeal and remand the case to the trial court to pursue his motion for new trial. 

 A criminal defendant is constitutionally entitled to effective assistance of counsel at all
critical stages of the prosecution. Michigan v. Jackson, 475 U.S. 625, 629-30 (1986); Upton v. State,
853 S.W.2d 548, 553 (Tex. Crim. App. 1993). The Texas Court of Criminal Appeals has not
expressly held the thirty-day period allowed for preparing and filing a motion for new trial is a
"critical stage" of the proceedings. See Oldham v. State, 977 S.W.2d 354, 360-61 (Tex. Crim. App.
1998) (leaving question open). Assuming it is, Mason has not shown he was denied effective
representation of counsel during the time for filing and presenting a motion for new trial. 

 We presume the defendant was represented by counsel and that counsel acted
effectively. Oldham, 977 S.W.2d at 363. To show deficient performance, a defendant must show
counsel's performance fell below an objective standard of reasonableness and rebut the presumption
that counsel's decisions are based on sound strategy. Thompson v. State, 9 S.W.3d 808, 812-13 (Tex.
Crim. App. 1999). The record must affirmatively show the alleged ineffectiveness. Id. at 813.

 Mason's trial counsel continued to represent him after judgment and assisted him in filing
a pro se notice of appeal on March 19, 2002, eleven days after sentence was imposed. The same day,
the trial court appointed T. Pearson to represent Mason. Mason filed his pro se motion for new trial
fourteen days later, on April 2. A court form dated April 3 notices a setting relating to the motion
for new trial for April 12. An April 12 docket entry states "Court ordered Tom Pearson atty on the
Appeal case to meet with the Defendant to determine if Pearson will file a Motion for new Trial."
The motion for new trial was overruled by operation of law on May 23, 2002. Pearson continued
to represent Mason until June 2002, when this court allowed him to withdraw after he represented
to the court that he is not sufficiently familiar with the Texas Rules of Appellate Procedure to be
in charge of the appeal. 

 The record unequivocally supports the presumption that Mason was represented by counsel
during the time for preparing, filing, and presenting the motion for new trial. Mason argues,
however, that he has met his burden of showing Pearson's representation was deficient. He relies
on (1) Pearson's failure to file a motion for new trial or to adopt the pro se motion Mason filed;
(2) Pearson's failure to obtain a hearing on the pro se motion; (3) the April 12, 2003 docket entry;
and (4) Pearson's statement to this court in his motion to withdraw that he is not sufficiently familiar
with the Texas Rules of Appellate Procedure to be in charge of the appeal. We disagree that
deficient performance has been shown.

 As Mason concedes in his brief, the "record is silent as to any action that Pearson took on
[Mason's] behalf." Although it is evident Mason wanted to pursue a motion for new trial and
Pearson did not do so, the record is silent as to what, if anything, Pearson did to examine potential
grounds for a motion for new trial; silent as to why Pearson did not to pursue the grounds Mason
alleged pro se; and silent as to why Pearson did not himself file a motion for new trial. It is entirely
possible that after interviewing Mason and researching potential grounds for a motion for new trial,
including Mason's contention that trial counsel was ineffective, Pearson concluded there was no
legal or factual basis for pursuing a motion. It would be pure speculation for this court to conclude
from a silent record that Pearson "failed to render any assistance at all," as Mason contends. With
respect to the April 12 docket entry, Mason contends it "shows that either the trial court or Pearson
failed to realize that by the time this entry was made, it was too late for Pearson to file a motion for
new trial." As this statement recognizes, however, the docket entry could reflect nothing more than
the trial court's miscalculation of the deadline for filing a motion. Finally, Pearson's statement to
this court, made after the motion for new trial was overruled by operation of law, regarding his lack
of familiarity with the rules of appellate procedure sheds no light on what Pearson did or did not do
with respect to a motion for new trial. We hold Mason has failed to rebut the presumption that
counsel rendered effective assistance. (1)

Deadly Weapon Finding


 In his third point of error, Mason argues the trial court erred in entering an affirmative
finding in the judgment that Mason used or exhibited a deadly weapon. (2) We agree. 

 "On an affirmative finding [that defendant used or exhibited a deadly weapon during the
commission of a felony offense], the trial court shall enter the finding in the judgment of the court."
Tex. Code Crim. Proc. Ann. art. 42.12 § 3g(a)(2) (Vernon Supp. 2002). When the defendant is
tried by a jury on both guilt and punishment, the trial court has no authority to make an affirmative
finding that the defendant used a deadly weapon. Fann v. State, 702 S.W.2d 602, 603 (Tex. Crim.
App. 1985). The jury's verdict constitutes an affirmative finding of a deadly weapon only if:

 1) the indictment specifically pleads the words "deadly weapon" and the verdict
reads "guilty as charged in the indictment";


 2) the indictment specifically alleges the use of a particular weapon that is per
se a deadly weapon and the verdict reads "guilty as charged in the
indictment"; or 


 3) the jury affirmatively answers a special issue asking whether a deadly
weapon was used or exhibited in the commission of the offense.

Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). The court in Polk reached this holding
after researching the legislative history of article 42.12 of the Code of Criminal Procedure. Id. at 393
and n.1. The court concluded that by using the words "affirmative finding," the Legislature
"intended to mean the trier of fact's express determination that a deadly weapon ... was actually
used or exhibited during the commission of the offense." Id. The court overruled earlier cases and
held "[w]e will no longer look to the facts of the case to permit an "implied" affirmative finding."
Id. at 396. If the jury makes the affirmative finding, the trial court is then authorized to enter the
affirmative finding in the judgment. 

 The indictment in this case does not use the words "deadly weapon" and does not allege the
use of a particular weapon. Rather, the indictment pleaded that the manner and means of McGill's
death were unknown to the grand jury, and the jury was instructed to find Mason guilty if it found
beyond a reasonable doubt that he "intentionally or knowingly cause[d] the death of ... Jeremy
Wayne McGill, ... by a manner and means unknown to the Grand Jury." The jury was not submitted
a special issue asking whether a deadly weapon was used or exhibited in the commission of the
offense. The jury therefore did not make an affirmative finding of a deadly weapon. See Polk, 693
S.W.2d at 396.

 The State concedes that none of the Polk circumstances is present in this case but argues the
jury was not required to find that a deadly weapon was used because Mason admitted during
punishment that he shot McGill with a rifle (a per se deadly weapon) and thus "remove[d] the
burden of proof from the State." For support, the State relies on Cole v. State, 578 S.W.2d 127 (Tex.
Crim. App. 1979), in which the court held that a judicial confession was sufficient to sustain a
finding of guilt pursuant to guilty plea. Id. at 128. There is no question that Mason's testimony
would have been sufficient to support a jury's finding that a deadly weapon was used. However,
Cole does not hold that a judgment of conviction may be upheld without a finding of guilt by the
trier of fact. 

 The State cites no authority, and we have found none, to support the State's argument that
the trier of fact need not make a deadly weapon finding if the defendant admits its use. Here, the
jury made no finding, express or implied, that a deadly weapon was used. The trial court was not
authorized to make the finding. See Fann, 702 S.W.2d at 603; Polk, 693 S.W.2d at 394. The trial
court therefore erred in entering the deadly weapon finding in the judgment.

 The State next contends the error was harmless because a deadly weapon finding or
conviction of certain felony offenses, including murder, results in the defendant being ineligible for
release to mandatory supervision and affects the period of time that must be served before being
eligible for parole. Tex. Gov't Code Ann. §§ 508.145, 508.149 (Vernon Supp. 2002); Tex. Code
Crim. Proc. Ann. art. 42.12 § 3g (Vernon Supp. 2002). Thus, striking the deadly weapon finding
from the judgment will have no effect on Mason as far as those matters are concerned. However,
most courts that have considered this question have concluded that other potential collateral effects
of a deadly weapon finding preclude a holding that its erroneous inclusion in a judgment is
harmless. See Cobb v. State, 95 S.W.3d 664, 667 n. 1 (Tex. App.-Houston [1st Dist.] 2002, no pet.);
Barnes v. State, 62 S.W.3d 288, 302 (Tex. App.-Austin 2001, pet. ref'd); Enlow v. State, 46 S.W.3d
340, 345 (Tex. App.-Texarkana 2001, pet. ref'd), cert. denied, -- U.S. --, 122 S.Ct. 2675 (2002);
Edwards v. State, 21 S.W.3d 625, 627-28 (Tex. App.-Waco 2000 no pet.); Rachuig v. State, 972
S.W.2d 170, 179 (Tex. App.-Waco 1998, pet. ref'd); but see Upson v. State, 949 S.W.2d 531, 533-34 (Tex. App.-Houston [14th Dist.] 1997, no pet.) For instance, the judgment in this case, with the
improper deadly weapon finding, could be admitted against Mason if he is tried for another offense
in the future. See Enlow, 46 S.W.3d at 345. Moreover, "[w]e do not presume to know the effect this
improper finding might have on [the defendant's] parole eligibility under the guidelines established
by the Board of Pardons and Paroles." (3) Edwards v. State, 21 S.W.3d 625, 627-28 (Tex. App.-Waco
2000, no pet.) (quoting Rachuig v. State, 972 S.W.2d 170, 179 (Tex. App.-Waco 1998, pet. ref'd)).
We therefore cannot conclude the error was harmless. Accordingly, the deadly weapon finding must
be stricken from the judgment.

Failure to Instruct Jury on Parole


 In his final point of error, Mason argues he was egregiously harmed by the trial court's
failure to instruct the jury on the law applicable to parole eligibility. 

 In the penalty phase of the trial of certain offenses, including murder, when the jury is
assessing punishment, the trial court is required to include an instruction on parole eligibility. Tex.
Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2002). (4) The instruction, in the exact words
used in the statute, is mandatory. Luquis v. State, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). The
trial court therefore erred in failing to include the instruction in the jury charge. 



Harm


 Mason did not object to the charge and did not request an instruction on parole. The error
in failing to include the statutorily required instruction is therefore reversible only if it was so
egregious and creates such harm that Mason did not have a fair and impartial trial on punishment.
See Huizar v. State, 12 S.W.3d 479, 483-84 (Tex. Crim. App. 2000); Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984). In making this determination, "the actual degree of harm must
be assayed in light of the entire jury charge, the state of the evidence, including the contested issues
and weight of probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." Almanza, 686 S.W.2d at 171. The purpose of this
review is to illuminate the actual, not just theoretical, harm to the accused. Id. at 174.

 Mason argues he suffered egregious harm because the charge left "the jury in the dark about
the minimum amount of time [he] would have to serve in prison before he even became eligible for
parole" and concludes that, because the range of punishment was five years to life, "there is ... a
reasonable probability that but for the effect of the trial court's failure to inform jurors that
Appellant would have to serve 30 years or one-half of whatever sentence they assessed, the jury's
punishment verdict ... would have been different." We disagree.

 We start by rejecting Mason's suggestion that the mere fact the jury was not instructed about
the minimum time Mason would have to serve is alone sufficient to establish egregious harm. Such
a holding would result in an automatic finding of egregious harm every time the section 4(a) parole
instruction is not given. We also note that a number of courts have recognized that the parole
instruction is designed to increase the length of sentences assessed by juries. Its absence from the
charge therefore did not harm the defendants. See Williams v. State, 975 S.W.2d 375, 378 (Tex.
App.-Waco 1998, pet. ref'd); Curry v. State, 861 S.W.2d 479, 482 (Tex. App.-Fort Worth 1993, pet.
ref'd); Grigsby v. State, 833 S.W.2d 573, 576 (Tex. App.-Dallas 1992, pet. ref'd); see also Arnold
v. State, 786 S.W.2d 295, 300 (Tex. Crim. App.), cert. denied, 498 U.S. 838 (1990). More specific
to this case, the parts of the section 4(a) instruction relating to "good conduct time" only marginally
apply to a defendant convicted of murder. Luquis, 72 S.W.3d at 362. The instruction is arguably
misleading as applied such a defendant in that it suggests he may be eligible, due to "good conduct,"
for release earlier than he in fact will be. See id. Thus, in theory, it would be difficult to conclude
a defendant convicted of murder suffered egregious harm from the absence of the section 4(a)
instruction.

 Our review of the record as a whole leads us to conclude Mason did not in fact suffer
egregious harm as a result of the failure to instruct on parole. The evidence regarding the murder
that was before the jury when it deliberated punishment was largely undisputed. Mason shot McGill
in the back of the head with a rifle as McGill was driving. The only dispute was whether Mason,
who was riding in the back seat, discharged the rifle intentionally or whether, as he testified, the
rifle discharged accidentally. However, the jury had previously found the shooting was intentional.
Mason's own testimony established that when he got out of the car, McGill lay between the seats
either dying or dead, Mason was not sure which. He and a friend who had been riding in the
passenger seat then removed a large speaker installed in the trunk of the car, hid it at the scene, and
left to walk home without further checking on McGill. At his grandfather's house, Mason got a car
and a can of gas so they could return to pick up the speaker and burn McGill's car, with McGill in
it. At the time, he did not know if McGill was still alive. Mason returned to the scene, emptied the
can of gas in the car and on McGill, and set them on fire. He took the speaker home and put it in his
closet. The next day, after his brother told him McGill had been found dead, Mason and a friend
went out for a day on the river. Later that day, he gave a statement to police in which he stated the
last time he saw McGill was the previous night when McGill left to go "partying" with some "black
dudes." Mason opined McGill should not have gone with them because he "know[s] how crazy they
get when they've been drinking cough medicine and smoking dope." 

 The jury also learned that Mason was committed to the Texas Youth Commission in 1996,
when he was sixteen after the juvenile court found Mason had carried a handgun onto premises
licensed to sell alcohol, evaded and resisted arrest, and possessed marijuana. After he was released
from TYC, between 1999 and the date of McGill's murder in March 2001, Mason was convicted
of criminal trespass, two misdemeanor charges of driving under the influence, misdemeanor theft,
misdemeanor possession of a controlled substance, felony theft, and seven charges of driving with
a suspended license. The State also presented compelling evidence, which Mason did not dispute,
that Mason committed a burglary of a habitation in September 2000. That charge was pending at
the time of Mason's murder trial. The undisputed evidence before the jury clearly depicted Mason
as a person with no regard for the law and callous disregard for human life. 

 The jury charge instructed the jury on the range of punishment of five years to ninety-nine
years or life and a fine not to exceed $10,000. The charge did not include any instruction relating
to parole or the jury's consideration of parole. Neither the defense nor the State mentioned parole
in closing argument. Mason's attorney asked the jury to consider Mason's background, the effects
of drug and alcohol abuse, the lack of evidence of any animosity between Mason and McGill, and
the relative lack of violence in Mason's criminal history. He urged the jury to consider assessing
punishment at the lower end of the range and to "not throw him away for life." The State
emphasized Mason's criminal history and his complete failure to take any action to try to get help
for McGill. It argued that the juvenile system had tried to rehabilitate him and failed. Despite a
familial support system when Mason was discharged from TYC, he continued to disregard the law.
The prosecutor argued Mason would not be rehabilitated, stating: "This is not someone you want
back out in society. We've tried. Tried for a long time, since 1996 to make Joe get the picture and
he doesn't get it." The State urged the jury to sentence Mason to life. Less than twenty minutes after
the jury began deliberating, it sent a note to the judge asking, "How much time is served on a life
sentence ... [or] for 75 years." The court responded that it could not answer the question. The jury
deliberated about two more hours and then returned a seventy-five year sentence. 

 Had the trial court properly instructed the jury, the jurors would have known that Mason
would serve at least thirty years if sentenced to any term above fifty-nine years. They also would
have been told "not to consider the manner in which the parole law may be applied to this particular
defendant." Mason would have us conclude that "there is ... a reasonable probability" the jurors, had
they been properly instructed, would have sentenced him to something less than sixty years. We
disagree. Considering the record as a whole, including the substance of the omitted instruction, we
conclude that the trial court's failure to give the statutorily required instruction on parole did not
egregiously harm Mason.

Conclusion


 We strike the affirmative finding of a deadly weapon from the judgment, reform the
judgment by deleting the improper finding, and affirm the judgment as reformed.


 Sarah B. Duncan, Justice

Do not publish


1. The cases Mason relies on do not require a different result. In three of them, the record contained direct
evidence the defendant had no representation during all or part of the period for filing a motion for new trial. See Jack
v. State, 64 S.W.3d 694 (Tex. App.-Houston [1st Dist.] 2002, pet. granted); Hanson v. State, 11 S.W.3d 285 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd); Massingill v. State, 8 S.W.3d 733 (Tex. App.-Austin 1999, order, pet.
ref'd). In Champion v. State, 82 S.W.3d 79 (Tex. App.-Amarillo 2002, no pet.), and Prudhomme v. State, 28 S.W.3d
114 (Tex. App.-Texarkana 2000, order), disp. on merits, 47 S.W.3d 683 (Tex. App.-Texarkana, 2001, pet. ref'd), the
defendants filed timely pro se motions for new trial alleging ineffective assistance of counsel and asked that new counsel
be appointed. Champion, 82 S.W.3d at 80; Prudhomme, 28 S.W.3d at 117. Although the defendants continued to be
nominally represented by trial counsel, counsel did not pursue the motions. The trial court did not appoint new counsel
until the time for filing and presenting a motion for new trial had passed. Champion, 82 S.W.3d at 80-81; Prudhomme,
28 S.W.3d at 117, 119. In each case, the court held that the defendant's request for appointment of new counsel, trial
counsel's failure to act on defendant's desire to pursue a motion for new trial, and the potential conflict of interest posed
by the claims of ineffectiveness in the pro se motions rebutted the presumption that trial counsel continued to effectively
represent the defendant. Champion, 82 S.W.3d at 82-83; Prudhomme, 28 S.W.3d at 120. These circumstances are not
present in this case since the trial court appointed new counsel eleven days after judgment and before the pro se motion
for new trial alleging ineffective assistance of trial counsel was filed.
2. The State suggests that Mason failed to preserve his claim for review by not objecting to the judgment. We
disagree. A defendant need not object to the wording of a judgment or raise the issue by postjudgment motion to preserve
this issue for appeal. Cobb v. State, 95 S.W.3d 664, 666 (Tex. App.-Houston [1st Dist.] 2002, no pet.); Edwards v. State,
21 S.W.3d 625, 626 n.1 (Tex. App.-Waco 2000 no pet.); see French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App.
1992) (holding State may ask appellate court to reform judgment to include affirmative finding of deadly weapon even
though it did not raise issue in trial court); see also Rankin v. State, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001) (holding
defendant not required to preserve argument that evidence is legally insufficient to support deadly weapon finding).
3. Under the Board of Pardons and Paroles' revised parole guidelines, inmates are assigned a Parole Guideline
Score based on a risk assessment instrument and offense severity. In the risk assessment instrument, an inmate receives
a score on each of ten factors. One of these factors is the offense for which the inmate is committed. The total score
determines whether the inmate is low, moderate, high, or highest risk. A separate risk level is assigned based on the
severity of the offense. An offense severity rating has been assigned to each felony offense in the Penal Code. The two
components of the guidelines are then merged into a matrix that yields the inmate's Parole Guidelines Score based on the
intersection of his risk level and the offense severity rating. While the offense severity rating is not affected by the presence
or absence of an affirmative finding of a deadly weapon in the judgment, the guidelines do not state to what extent, if any,
such a finding affects the inmates score on the "commitment offense" factor of the risk assessment instrument.
4. The instruction states: 


 Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn
time off the period of incarceration imposed through the award of good conduct time. Prison
authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in
carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in
misconduct, prison authorities may also take away all or part of any good conduct time earned by the
prisoner. 


 It is also possible that the length of time for which the defendant will be imprisoned might be reduced
by the award of parole. 


 Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will
not become eligible for parole until the actual time served equals one-half of the sentence imposed or
30 years, whichever is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at least two years before he is
eligible for parole. Eligibility for parole does not guarantee that parole will be granted. 


 It cannot accurately be predicted how the parole law and good conduct time might be applied to this
defendant if he is sentenced to a term of imprisonment, because the application of these laws will
depend on decisions made by prison and parole authorities. 


 You may consider the existence of the parole law and good conduct time. However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited by this particular
defendant. You are not to consider the manner in which the parole law may be applied to this particular
defendant.


TEX. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2002).