IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00265-CR

 

Reginald Hooper,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 217th District Court

Angelina County, Texas

Trial Court # 24533

 



O p i n i o n  o n  r e m a n d



 

            Appellant Reginald Hooper raises three
issues challenging his conviction as a party to the aggravated assault of a
public servant and his thirty-year sentence with a deadly-weapon finding.  On
original submission, a majority found that the evidence was legally
insufficient, reversed the conviction, and rendered a judgment of acquittal.  Hooper
v. State, 170 S.W.3d 736 (Tex. App.—Waco 2005, pet. granted).  The Court of
Criminal Appeals remanded the case for reconsideration on the basis that the
majority opinion incorrectly applied the legal sufficiency standard.  Hooper
v. State, 214 S.W.3d 9 (Tex. Crim. App. 2007).

            We thoroughly set forth the evidence
on original submission.[1]  See
Hooper, 170 S.W.3d at 738-41.  Thus, we limit our discussion on remand to
the evidence directly pertinent to the issues before us.

Legal Sufficiency

We begin again with Hooper’s third issue, which
complains of the legal sufficiency of the evidence to support his conviction as
a party to the offense of aggravated assault.  When reviewing a challenge to
the legal sufficiency of the evidence to establish the elements of a penal
offense, we must determine whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  When the record supports conflicting inferences, we presume that
the trier of fact resolved the conflicts in favor of the State and defer to
that determination.  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In reviewing the sufficiency of the evidence, we
should look at “events occurring before, during and after the commission of the
offense and may rely on actions of the defendant which show an understanding
and common design to do the prohibited act.”  Cordova v. State, 698
S.W.2d 107, 111 (Tex. Crim. App. 1985).  Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction.  See
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (“[i]t is not
necessary that every fact point directly and independently to the defendant’s
guilt; it is enough if the conclusion is warranted by the combined and
cumulative force of all the incriminating circumstances.”); Barnes v. State,
876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Alexander v. State, 740
S.W.2d 749, 758 (Tex. Crim. App. 1987).  Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Guevara
[v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)].  On appeal,
the same standard of review is used for both circumstantial and direct evidence
cases.  Id.

 

. . .

 

Under Jackson v. Virginia, courts of
appeals assessing legal sufficiency are to consider all the evidence in the
light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational juror could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson,
443 U.S. at 318-19, 99 S.Ct. 2781; Powell [v. State, 194 S.W.3d 503,
506 (Tex. Crim. App. 2006)]; Guevara, 152 S.W.3d at 49.

 

. . .

 

Under the Jackson test, we permit juries to
draw multiple reasonable inferences as long as each inference is supported by
the evidence presented at trial.  However, juries are not permitted to come to
conclusions based on mere speculation or factually unsupported inferences or
presumptions.

 

            . . .

 

[C]ourts of appeals should adhere to the Jackson standard and determine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.

 

Hooper,
214 S.W.3d at 13, 15-17.

Hooper was convicted of being a party to the
offense of aggravated assault of a public servant.  A person commits the
offense of aggravated assault of a public servant if the person intentionally
or knowingly threatens another with imminent bodily injury and the person uses
or exhibits a deadly weapon during the commission of the offense, and the
offense is committed against a person who the actor knows is a public servant
while the public servant is lawfully discharging an official duty.  Tex. Pen. Code Ann. §§ 22.01(a)(2),
22.02(a)(2), (b)(2) (Vernon Supp. 2007).

Under the law of parties, a person may be
convicted as a party to an offense if the offense is committed by his own
conduct or by the conduct of another for which he is criminally responsible.  Tex. Pen. Code Ann. § 7.01(a) (Vernon
2003).  A person may be criminally responsible for another’s conduct in two
ways:  (1) by being a “party” to the offense under subsection 7.02(a);[2]
or (2) by being part of a conspiracy to commit a felony under subsection
7.02(b).  See id. § 7.02(a), (b).

To find Hooper guilty as part of a conspiracy, the
jury must have found beyond a reasonable doubt that:  (1) Hooper and the
co-conspirators engaged in an attempt to carry out a conspiracy to commit
aggravated robbery or another felony, (2) in that attempt, one of the
co-conspirators committed aggravated assault of a public servant, (3) the
aggravated assault was committed in furtherance of the aggravated robbery or
other felony conspiracy, and (4) the aggravated assault was an offense that
should have been anticipated as a result of carrying out the conspiracy.  Hooper,
214 S.W.3d at 14 n.4.  “Conspiracy” is an agreement between two or more
persons, with intent that a felony be committed, that they, or one or more of
them, engage in conduct that would constitute the offense.  Tex. Pen. Code Ann. § 15.02(a). 
An agreement constituting a conspiracy may be inferred from acts of the
parties.  Id. § 15.02(b).

Because the application paragraph charged the jury
only on Hooper’s party status as part of a conspiracy to commit aggravated
robbery, we will limit our analysis to that theory.

In finding Hooper guilty of aggravated assault of
a public servant, the jury concluded that in facilitating a conspiracy to
commit robbery, Hooper should have anticipated Nicholson’s aggravated assault
of Shewmake during the getaway.  The State’s theory at trial and on appeal is
that Hooper was the driver of the getaway car at the robbery.

Viewing the evidence in the light most favorable
to the verdict, we find that Hooper’s driving the getaway car when he was
pulled over by Shewmake—approximately thirty minutes after the robbery—is
circumstantial evidence or allows an inference that Hooper was driving the
getaway car at the scene of the robbery.  A rational juror could infer that
Hooper, as the getaway car driver, knew that Austin and Nicholson were going to
rob the store and that they were armed.  That Nicholson and Austin were lying
down in the getaway car with guns while Shewmake was following Hooper is
circumstantial evidence that Hooper knew that they were trying to avoid
detection and capture.  Additionally, when Nicholson was captured, he gave law
enforcement information that Austin was armed and did not intend on being taken
alive.  While being followed by Shewmake, Hooper stopped the car and Nicholson
and Austin got out, with Nicholson firing a shot at Shewmake.  Hooper
immediately surrendered and cooperated with Shewmake, but a rational juror
could infer that he did so not because he had not been involved in the robbery
and getaway, but because he did not want to risk being injured or killed by
Shewmake during Nicholson’s and Austin’s flight from capture.

From all of this evidence and these inferences—which
the Court of Criminal Appeals says can be stacked upon each other—a rational
juror could infer that Hooper conspired to commit aggravated robbery and that Hooper
should have anticipated Nicholson’s aggravated assault of Shewmake during the
getaway.  See Hooper, 214 S.W.3d at 15-16.  We thus hold that these
multiple reasonable inferences, when considered with the combined and
cumulative force of the direct and circumstantial evidence, is legally
sufficient and that a rational juror could find, beyond a reasonable doubt, that
Hooper was guilty as a party to aggravated assault of a public servant under the
conspiracy theory of party liability.[3]  See,
e.g., Clayton, 235 S.W.3d at 779-82; Cunningham v. State, 982 S.W.2d
513, 519-20 (Tex. App.—San Antonio 1998, pet. ref’d).  Hooper’s third issue is
overruled.

Factual Sufficiency

Hooper’s second issue complains of the factual
sufficiency of the evidence.  In a factual sufficiency review, we ask whether a
neutral review of all the evidence, though legally sufficient, demonstrates
either that the proof of guilt is so weak or that conflicting evidence is so
strong as to render the factfinder’s verdict clearly wrong and manifestly
unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7
(quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). 
The appellate court “looks at all the evidence on both sides and then makes a
predominantly intuitive judgment. . . .”  Id. (quoting William Powers
and Jack Ratliff, Another Look at “No Evidence” and “Insufficient Evidence,”
69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s determination. 
Watson, 204 S.W.3d at 416-17.

            In this case, because no direct
evidence placed Hooper at the scene of the robbery, a rational juror could
infer that Hooper, unaware of the robbery, joined Austin and Nicholson after
the robbery.  Also, a rational juror could infer from Hooper’s stopping the car
and his immediate surrender to and cooperation with Shewmake that Hooper had not
been involved in the robbery.  But when the record supports conflicting
inferences (detailed above in our legal sufficiency discussion), we presume
that the trier of fact resolved the conflicts in favor of the State and defer
to that determination.  Clayton, 235 S.W.3d at 778.

            Our neutral review of all the evidence
does not demonstrate either that the proof of guilt is so weak or that
conflicting evidence is so strong as to render the jury’s verdict clearly wrong
and manifestly unjust.  We find that
the jury was justified in finding Hooper guilty.  See Watson, 204
S.W.3d at 415.  We overrule the second issue.

Charge Error

            Hooper’s first issue complains of the
trial court’s deadly-weapon finding and error in the punishment charge, which
reads in pertinent part:

            Under the law applicable in this case,
the defendant, if sentenced to a term of imprisonment, may earn time off the
period of incarceration imposed through the award of good conduct time. 
Prison authorities may award good conduct time to a prisoner who exhibits good
behavior, diligence in carrying out prison work assignments, and attempts at
rehabilitation.  If a prisoner engages in misconduct, prison authorities may
also take away all or part of any good conduct time earned by the prisoner.

 

It is also possible that the length of time
for which the defendant will be imprisoned might be reduced by the award of
parole.

 

            Under the law applicable in this case,
if the defendant is sentenced to a term of imprisonment, he will not
become eligible for parole until the actual time served equals one-fourth
of the sentence imposed or 15 years, whichever is less, without
consideration of any good conduct time he may earn.  Eligibility for parole
does not guarantee that parole will be granted.  

 

            It cannot accurately be predicted how
the parole law and good conduct time might be applied to this defendant if he
is sentenced to a term of imprisonment, because the application of these laws
will depend on decisions made by prison and parole authorities.

 

            You may consider the existence of the
parole law and good conduct time.  However, you are not to consider the extent
to which good conduct time may be awarded to or forfeited by this particular
defendant.  You are not to consider the manner in which the parole law may be
applied to this particular defendant.  [Emphases added].

 

While the trial court was reading this charge to
the jury, the following occurred:

Under the law applicable in this case, if the Defendant
is sentenced to a term of imprisonment, he will not become eligible for parole
until the actual time served –

 

                        Let’s
approach the bench.

 

            THE COURT:  Shouldn’t that be
one-third – yes, it should okay I’ll just correct it.  One more thing.  And
this is a 3(g) offense.  This has got to be 30 years.

 

            Okay.  Let me read that paragraph
over.  Under the law applicable in this case, if the Defendant is sentenced to
a term of imprisonment, he will not become eligible for parole until the
actual time served plus any good conduct time earned equals one-third of
the sentence imposed or 30 years, whichever is less.  Eligibility for
parole does not guarantee that parole will be granted.  [Emphases added].

 

After argument had concluded, the trial court
attempted another correction:  

Ladies and gentlemen, I need to reread probably
about one page because I counseled with them, and we jumped to a conclusion
that was wrong.  We thought the charge was wrong.  The charge is right, but I
want to make sure that you understand it.

 

            The trial court then re-read the
charge paragraphs on good-conduct time and parole eligibility, including:  

Under the law applicable in this case, if the
defendant is sentenced to a term of imprisonment, he will not become eligible
for parole until the actual time served equals one-fourth of the
sentence imposed or 15 years, whichever is less, without consideration of
any good conduct time he may earn.  [Emphasis added].

 

            Hooper argues, and the State agrees,
that this portion of the punishment charge was erroneous because the trial
court was required to and did enter a deadly-weapon finding in the judgment. 
If the judgment contains an affirmative deadly-weapon finding under Section
3g(a)(2) of Article 42.12, the trial court is to charge the jury in writing as
follows, in pertinent part:

Under the law applicable in this case, if the
defendant is sentenced to a term of imprisonment, he will not become eligible
for parole until the actual time served equals one-half of the sentence
imposed or 30 years, whichever is less, without consideration of any
good conduct time he may earn.  If the defendant is sentenced to a term of
less than four years, he must serve at least two years before he is eligible
for parole.  Eligibility for parole does not guarantee that parole will be
granted.

 

Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2007) (emphases
added); see Parker v. State, 119 S.W.3d 350, 358-59 (Tex. App.—Waco
2004, pet. ref’d).

            Deadly-Weapon Finding

            Hooper asserts that because the trial
court did not give the correct jury instruction for a deadly-weapon case, one
curative measure would be the deletion of the deadly-weapon finding from the
judgment.

The indictment charged Hooper as a principal actor
in the aggravated assault of Shewmake with a deadly weapon (a firearm).  The guilt-innocence
charge instructed the jury on aggravated assault of a public servant,
aggravated robbery with a deadly weapon (a firearm), and the law of parties
(both party and conspiracy).  The application paragraph charged the jury on the
aggravated assault of Shewmake with a firearm by Nicholson or Austin as being
committed in furtherance of the aggravated robbery conspiracy and one that
Hooper should have anticipated as a result of carrying out the conspiracy.  The
jury found Hooper “guilty of the offense of aggravated assault of a public
servant as alleged in the indictment.”

            In 1977, the Legislature amended
Article 42.12 to provide, in appropriate cases, for the affirmative finding of
the use or exhibition of a deadly weapon.  Such a finding could be made if it
was shown by the evidence “that the defendant used or exhibited a deadly weapon
. . . during the commission of a felony offense or during immediate flight
therefrom.”  Act of May 30, 1977, 65th Leg., R.S., ch. 347, 1977 Tex. Gen. Laws
925, 926.  Upon making such a finding, the trial court was instructed to “enter
the finding in the judgment of the court.”  Id.  After the 1977
amendment, trial courts routinely entered affirmative findings in appropriate
cases, but an issue soon arose regarding the propriety of entering an
affirmative finding in cases where the defendant was convicted as a party.

            The Court of Criminal Appeals
addressed the issue and held:

We find that the phrase “the defendant used or
exhibited a deadly weapon” implies that the defendant, himself, use or exhibit
a deadly weapon during the commission of a felony or flight therefrom.  When a
defendant is a party . . . to the use or exhibition of a deadly weapon, there
must be a specific finding by the trier of facts that the defendant himself
used or exhibited the deadly weapon.

 

Travelstead v. State, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985); see
also Flores v. State, 690 S.W.2d 281, 283 (Tex. Crim. App. 1985).  Appellate
courts thus held that when a defendant was convicted as a party, an affirmative
finding of a deadly weapon must be supported by evidence and a finding that the
defendant himself used or exhibited the weapon.  See, e.g., Ray v.
State, 764 S.W.2d 406, 414 (Tex. App.—Houston [14th Dist.] 1988, pet.
ref’d).  The Legislature effectively overruled Travelstead in 1991 by
amending Article 42.12 to provide for an affirmative finding of a deadly weapon
if “the defendant used or exhibited a deadly weapon or was a party to the
offense and knew that a deadly weapon would be used or exhibited.”  Act of May
25, 1991, 72nd Leg., R.S., ch. 541, 1991 Tex. Gen. Laws 1876.  Some
disagreement among the courts of appeals existed over the extent that Travelstead
was overruled.  See Johnson v. State, 6 S.W.3d 709, 714-15 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d).  That disagreement apparently has been
resolved.  See Sarmiento v. State, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d); see also Lafleur v. State, 106 S.W.3d 91
(Tex. Crim. App. 2003).[4]

Section 3g(a)(2) of Article 42.12 requires that,
when there is an “affirmative finding” by the fact-finder that during the
offense, “the defendant used or exhibited [a] deadly weapon or was a party to
the offense and knew that a deadly weapon would be used or exhibited,” the
trial court must enter that finding in the judgment, and if the deadly weapon
is a firearm, that fact shall also be entered.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g(a)(2) (Vernon Supp. 2007) (“On an affirmative finding under this
subdivision, the trial court shall enter the finding in the judgment of the
court.  On an affirmative finding that the deadly weapon was a firearm, the
court shall enter that finding in its judgment.”); Parker, 119 S.W.3d at
358.  Thus, in this case the trial court was required to and did enter a
deadly-weapon (handgun) finding in Hooper’s judgment.  See Parker,
119 S.W.3d at 359 (under application paragraph and verdict, jury necessarily
found that defendant was a party and knew that a deadly weapon would be used or
exhibited).[5]  Hooper
has not shown how the deadly-weapon finding resulted from the jury instruction
error, and we find no basis for deleting the deadly-weapon finding in this case.

            Parole and Good-Conduct Instructions

Hooper did not object to the trial court’s
erroneous instruction.  An unpreserved complaint about charge error is reviewed
for “egregious harm.”  Almanza v. State, 686 S.W.2d 157, 171-72 (Tex.
Crim. App. 1985) (op. on reh’g).  This standard applies to erroneous parole and
good-conduct instructions.  Igo v. State, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006); Jimenez v. State, 32 S.W.3d 233, 235-39 (Tex. Crim. App.
2000).  Egregious harm is a difficult standard that is determined on a
case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  Errors that result in egregious harm are those that affect “the
very basis of the case,” deprive the defendant of a “valuable right,” or
“vitally affect a defensive theory.”  Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 172).  The
harm to Hooper must be actual, not just theoretical.  Almanza, 686
S.W.2d at 174.  In deciding whether egregious harm exists, we look at (1) the
charge itself, (2) the state of the evidence, including contested issues, (3)
the arguments of counsel, and (4) any other relevant information revealed by
the record of the trial as a whole.  Hutch, 922 S.W.2d at 171.  Hooper
seeks a new punishment hearing for this error.

The required deadly-weapon finding mandated that
the jury be charged that Hooper would not become eligible for parole until the
actual time served equals the lesser of one-half of the sentence imposed or 30
years, without consideration of any good conduct time, and that if he
were sentenced to a term of less than four years, he must serve at least two
years before he is eligible for parole.  The erroneous charge instructed the
jury that Hooper would not become eligible for parole until the actual time
served equals one-fourth of the sentence imposed or 15 years,
whichever is less, without consideration of any good conduct time he may earn. 
It also omitted that if Hooper were sentenced to a term of less than four
years, he must serve at least two years before he is eligible for parole.[6]

Hooper’s argument that egregious harm exists is
that, based on the erroneous instruction given, the jury, in assessing a
thirty-year sentence, thought that Hooper would have to serve at least
one-fourth, or seven and one-half years, but because of the deadly-weapon
finding in the judgment, he actually must serve at least one-half, or fifteen
years.  As a result, Hooper reasons, he must actually serve at least seven and
one-half more years than the jury intended he serve.

The purpose of subsection 4(a) of Article 37.07,
the instruction correctly applicable to Hooper, has been described as follows:

The statutory parole charge instructs a jury in
very general terms about the existence and possible grant of parole.  It
explicitly informs the jury that persons such as appellant are ineligible for
release on parole until they have served one-half of their sentence or thirty
years, whichever is less.  The instruction also refers to the concept of “good
conduct time” and states that a person sentenced to prison might earn some
reduction in his period of incarceration (though not a reduction of his
sentence) through the discretionary award of good conduct time.  The final two
paragraphs of the instruction clearly warn the jury that neither they, nor
anyone else, can accurately predict how the concepts of “good conduct time” or
parole might be applied to any particular person and thus they may not consider
how those concepts might apply to the defendant.  Thus, the over-all purpose of
the instruction is to inform jurors of these concepts as a general proposition,
but to prohibit the jury from using its notions of parole or “good conduct time”
in any calculus in assessing the appropriate punishment.

 

Luquis v. State, 72 S.W.3d 355, 360 (Tex. Crim. App. 2002) (footnote omitted); see
also Parker, 119 S.W.3d at 355-57 (discussing subsection 4(a), good-time
credit, and its role in, and the distinction between, mandatory supervision and
parole); Bui v. State, 68 S.W.3d 830, 838-41 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (en banc) (same); Felan v. State, 44 S.W.3d 249,
255-57 (Tex. App.—Fort Worth 2001, pet. ref’d) (same).

            Numerous cases have addressed
egregious harm in the context of a punishment charge containing errors and
omissions in the parole and good-conduct instructions.  Several common threads
run among those cases.  First and foremost is the presumption that the jury
followed the charge’s instructions.  See Luquis, 72 S.W.3d at 366; Parker,
119 S.W.3d at 357; Newman v. State, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref’d).  Thus, we presume that the jury followed the trial
court’s instructions and did not consider parole:  “However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited
by this particular defendant.  You are not to consider the manner in which the
parole law may be applied to this particular defendant.”  See Shavers v.
State, 985 S.W.2d 284, 291 (Tex. App.—Beaumont 1999, pet. ref’d); Williams
v. State, 975 S.W.2d 375, 378 (Tex. App.—Waco 1998, pet. ref’d).  Absent
evidence or indications to the contrary, this presumption prevails.  Shavers,
985 S.W.2d at 291; Love v. State, 909 S.W.2d 930, 935 (Tex. App.—El Paso
1995, pet. ref’d); Clayton v. State, 767 S.W.2d 504, 506 (Tex. App.—Amarillo
1989, pet. ref’d).

            When there is a note from the jury
regarding parole or good-conduct time, courts are more prone to find egregious
harm.  See, e.g., Villarreal v. State, 205 S.W.3d 103, 107-11 (Tex. App.—Texarkana 2006, pet. dism’d); Rogers v. State, 38 S.W.3d 725, 728-29 (Tex.
App.—Texarkana 2001, pet. ref’d); Ramos v. State, 831 S.W.2d 10, 17-18
(Tex. App.—El Paso 1992, pet. ref’d).  Another factor is the State’s emphasis
in argument on the possibility of parole.  See, e.g., Rogers, 38 S.W.3d
at 730.  And courts also sometimes consider the assessment of a high or maximum
sentence.  See, e.g., Villarreal, 205 S.W.3d at 109-10; Rogers, 38 S.W.3d at 730.

            Courts generally agree that the parole
instruction was designed to favor the State and to increase sentences.  See Arnold v. State, 786 S.W.2d 295, 300 (Tex. Crim. App. 1990); Williams, 975
S.W.2d at 378; Myres v. State, 866 S.W.2d 673, 674 (Tex. App.—Houston
[1st Dist.] 1993, pet. ref’d); Grigsby v. State, 833 S.W.2d 573, 576
(Tex. App.—Dallas 1992, pet. ref’d).  But it can help the defendant because the
jury could learn that the defendant would serve longer than it expected and
could be influenced to assess less time.  Williams, 975 S.W.2d at 378
(citing Myres, 866 S.W.2d at 674).

            We find one case most similar to
Hooper’s.  In Igo, the jury was erroneously instructed that the
defendant would not become eligible for parole until the actual time served,
plus good time, equaled one-fourth of the sentence imposed, but the jury should
have been instructed that he would not become eligible for parole until the
actual time served, without considering good time, equaled one-half of the
sentence imposed.  Igo, 210 S.W.3d at 646.  Egregious harm was not
found:

First, the parole instruction contained the
standard curative language admonishing the jury not to consider the extent to
which the parole law might be applied to the defendant.  Second, parole was not
mentioned by either counsel during argument on punishment.  And finally, the
evidence relating to punishment was exceptionally strong.

 

Id. at
647.

            In this case, there is no indication
that the jury improperly considered the effect of parole or good-conduct time. 
The range of punishment was five to 99 years or life, and the thirty-year
sentence is not extreme, given Hooper’s two prior felony convictions for
possession of cocaine and possession of cocaine with intent to deliver.  The
State commented on the prior convictions in argument, but it did not mention
the parole instructions.

And while the trial court’s two failed attempts to
correct the erroneous parole and good-conduct instructions may have highlighted
the parole issue, there is no reasonable likelihood that the trial court’s
errors caused the jury to calculate the sentence from the parole instructions. 
See Newman, 49 S.W.3d at 582.  There was no indication that the jury did
not follow the instruction to not consider the extent to which parole or
good-conduct time may affect Hooper.  We can acknowledge by speculation that
the jury may have calculated that Hooper would have to serve seven and one-half
years before he could be released.  See Luquis, 72 S.W.3d at 368
(Johnson, J., concurring) (“It is human nature to wonder how parole impacts the
length of incarceration.”).  But such speculation leads only to insufficient theoretical
harm, rather than actual harm.  Almanza, 686 S.W.2d at 174; Curry v.
State, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref’d).

            Considering the record as a whole, we
hold that the erroneous parole and good-conduct instruction did not prevent
Hooper from receiving a fair and impartial trial or cause egregious harm.  See
Williams, 975 S.W.2d at 378; Green, 839 S.W.2d at 946.  We overrule
his first issue.

Conclusion

            Having overruled all of Hooper’s
issues, we affirm the trial court’s judgment.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in the judgment
without a separate opinion.)

Affirmed

Opinion
delivered and filed March 12, 2008

Publish

[CRPM]









[1]               In our opinion on original
submission, we relied largely on Tippitt v. State, 41 S.W.3d 316 (Tex.
App.—Fort Worth 2001, no pet.).





[2]               Subsection 7.02(a)(2) provides that
a person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Tex. Pen.
Code Ann. § 7.02(a)(2); see Vodochodsky v. State, 158 S.W.3d 502,
509 (Tex. Crim. App. 2005).





[3]               With the
aggravated assault of Shewmake being committed in furtherance of the conspiracy
and one that should have been anticipated as a result of the conspiracy.  See
Tex. Pen. Code Ann. § 7.02(b); Ford
v. State, 507 S.W.2d 735, 736 (Tex. Crim. App. 1974); see also Tippitt,
41 S.W.3d at 324-25.





[4]               Judge Keller contends that the 1991
amendment to Article 42.12 did not completely abrogate Travelstead.  See
Lafleur, 106 S.W.3d at 100 (Keller, P.J., concurring).

 





[5]               In Parker, we stated:

When a jury is the finder of fact, the trial
court’s determination of whether there is an “affirmative finding” by the jury
is not made by the trial court’s reviewing the evidence to discern what the jury
found.  Lafleur v. State, 106 S.W.3d 91, 95 (Tex. Crim. App. 2003)
(involving conviction for a lesser-included offense).  Rather, the “affirmative
finding” may take any of the following forms:  (1) the indictment includes an
allegation of a “deadly weapon,” and the verdict states the defendant is guilty
as charged in the indictment, (2) the indictment does not allege “deadly
weapon,” but does allege a weapon that is per se a deadly weapon, and the
verdict states the defendant is guilty as charged in the indictment, or (3) the
jury has affirmatively answered a special charge issue on “deadly weapon” use
or exhibition.  Id.; Polk [v. State, 693 S.W.2d 391,
396 (Tex. Crim. App. 1985)].  Alternatively, if the application paragraph of
the charge adequately describes the use or exhibition of a deadly weapon, then
the verdict of “guilty” combined with the application paragraph constitute the “affirmative
finding.”  Lafleur, 106 S.W.3d at 98.

Parker, 119 S.W.3d at 358.





[6]               Because Hooper was not eligible for
a four-year sentence, he could not have been harmed by this omission.  See
Stewart v. State, 198 S.W.3d 60, 65 (Tex. App.—Fort Worth 2006, no pet.).