Keith Anthony Parker v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-141-CR

     KEITH ANTHONY PARKER,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2001-82-C
                                                                                                                

O P I N I O N
                                                                                                                

      During the evening of June 18, 2000, five people in an apartment in Waco were robbed at
gunpoint by two intruders. Some of the victims were tied up and bags were placed over their
heads. Some of the victims were threatened and some were struck. The shorter of the two
intruders was identified by three victims as the Appellant, Keith Anthony Parker. In April 2002,
a jury convicted Parker on five counts of aggravated robbery and assessed punishment at twenty
years in prison. Parker raises five issues on appeal:
      1.   The evidence is legally insufficient to support a finding that he was one of the two
intruders.
 
      2.   The evidence is factually insufficient to support a finding that he was one of the two
intruders.
 
      3.   The trial court erred by giving an incorrect jury charge submission about parole, good
conduct time, and “mandatory supervision.”
 
      4.   Parker received ineffective assistance of counsel because his trial attorney failed to object
to the incorrect jury charge submission.
 
      5.   The trial court’s finding that Parker used a deadly weapon is erroneous.

We will affirm the judgment.
Facts
      The only contested fact issue is whether Parker is the shorter of the two intruders. All five
victims testified at trial.
      •    Hayward Johnson had identified Parker in two different photographic lineups, and he also
identified Parker at trial. He said the shorter intruder was thickly built, had a thin
mustache and no beard, and was wearing a blue ball cap, a jersey, and blue jean shorts. 
This man had a gun.
 
      •    Brandy Redoux had identified a third person in a photographic lineup as looking similar
to the shorter intruder. In another lineup, she identified Parker. She also identified
Parker at trial. She said the shorter intruder was wearing a gray shirt and jeans, but she
did not remember a cap. She said he had wide nostrils and a well-defined lip, no facial
hair, and a three-inch afro hair cut.
 
      •    John Bass had identified Parker in two photographic lineups, and he also identified
Parker at trial. He said he saw the shorter man at first through the window to the
apartment: the man he saw was wearing glasses. Inside the apartment, the man did not
wear glasses. This man was heavy set and between five feet six inches and five feet eight
inches tall. He was wearing dark jean shorts and a black hat. The man did not have an
afro or long side burns. 
 
      •    Lamarcus Wells’s glasses had been knocked off during the robbery, and so he did not get
a clear look at the intruders. But he confirmed that the shorter of the two was about five
feet eight inches and stocky. He said the man was wearing blue jean pants and a maroon
cotton shirt with diamonds on it.
 
      •    Corlene Battle testified that she could not identify the shorter man, although he was
stocky with a round face.
      A sixth witness, Robert Melofsky, testified that Parker had cashed two money orders, stolen
during the robbery, at a bank the morning after the robbery.
      Parker sometimes wears glasses, is of medium height, and has a stocky build. He testified
that he was not in Waco on the day of the robbery, but rather he was in Dallas where he lived. 
He described being with relatives at various places in Dallas the afternoon and evening of the
robbery, including a barbecue at his sister’s home. He said that, on the day of the robbery, he had
short hair and sideburns connected to a mustache and goatee, and two prominent gold teeth he had
had for years. None of the State’s witnesses mentioned anything about gold teeth. Two
photographs taken of Parker by a bank video camera when he cashed the money orders show that
he had short hair, long sideburns, and what appears to be a mustache. He testified that Kelvin
Thurman, who worked at the same place as Parker, came by Parker’s apartment in Dallas at
midnight on the day of the robbery. Thurman had been a friend for years and had gotten out of
prison a few weeks earlier. Parker said Thurman admitted to committing a robbery in Waco and
stealing a car. Thurman came by again the next morning and asked Parker to cash two money
orders at Parker’s bank. Parker testified that he did not know the money orders were stolen.
      Parker gave two written statements to police on August 28, 2000. In the first, which is fifteen
lines long, he said that on the day of the robbery he “hung around my brother and sister all day
in Dallas.” He said that at midnight, Thurman, who had returned from Waco, came over to
Parker’s apartment. Thurman had some money orders and asked Parker to cash them. The next
morning, Parker went to his bank and cashed the money orders. He concluded: “I never went to
Waco.”
      In the second statement, given six and a half hours later, which is twenty-seven lines long,
he said Thurman came over about midnight. Thurman had him look at a car from the balcony. 
Thurman said he and his friends from Waco had committed an aggravated robbery using a gun and
had stolen two cars. He also had two money orders he asked Parker to cash, which Parker did. 
Parker concluded: “I didn’t help him do the robbery.”
      Parker’s half-brother, Kenneth Dixon, testified that he met Parker at Parker’s apartment in
Dallas about 1:30 p.m. on the day of the robbery. About 4:00 p.m., they went to the home of
their sister, Cynthia Dixon, in Dallas for a barbecue. They left about 7:00 p.m. and parted
company at 7:30 p.m. He admitted he had not contacted the police previous to the trial to inform
them of Parker’s alibi.
      Parker’s sister, Cynthia Dixon, confirmed that Parker and Dixon had been at her home on the
afternoon and evening of the day of the robbery for a barbecue. She said Parker left with Dixon,
but Parker returned at 9:00 p.m. Parker left her home about 9:45 p.m. with his niece, Mokeisha
Washington. Cynthia also admitted that she had not contacted the police previous to the trial to
inform them of Parker’s alibi.
      Parker’s niece, Mokeisha Washington, testified that she was at Cynthia’s that day. She
confirmed the testimonies of the other witnesses about Parker’s comings and goings. She also
testified that she spent the night at Parker’s home and he was there all night. She said that Kelvin
Thurman came by around midnight to see Parker. Thurman was a good family friend. She said
Thurman came back the next morning and asked Parker to go to the bank. She testified that she
had spoken by telephone with a police officer about these events but could not remember his name. 
Issue 1: Legal Sufficiency of the Evidence
      In reviewing a challenge to the legal sufficiency of the evidence, we view all the evidence in
the light most favorable to the verdict and determine whether a rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Burden v. State, 55
S.W.3d 608, 612 (Tex. Crim. App. 2001); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App.
1996) (citing due process standard from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979)).
      Three victims identified Parker as the shorter intruder, and he cashed two money orders stolen
during the robbery. Parker and his witnesses testified that he was in Dallas on the day of the
robbery. Although there were some discrepancies in the testimonies of the victims about the
intruder’s appearance, viewing all the evidence in the light most favorable to the verdict, a rational
trier of fact could have found beyond a reasonable doubt that Parker was the shorter intruder. 
Burden, 55 S.W.3d at 612.
      We overrule issue one.
Issue 2: Factual Sufficiency of the Evidence
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the “in the light
most favorable to the prosecution” construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask “whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      In our factual-sufficiency review, we must also remain cognizant of the factfinder’s role and
unique position—one that the reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The
jury determines the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that
accepts or rejects reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. 
A decision is not manifestly unjust as to the accused merely because the factfinder resolved
conflicting views of evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex.
Crim. App. 1997).
      Three of the five victims identified Parker both from pre-trial photographic lineups and at
trial. He was videotaped at his bank cashing two money orders stolen during the robbery. Parker
admitted to cashing the money orders. He also admitted that Thurman came to his apartment the
night of the robbery and confessed to the robbery in Waco.
      Parker’s defense, established through his testimony and that of three relatives, was that he was
in Dallas on the day of the robbery, and the victims who identified him must be mistaken. He
points to some discrepancies in their testimony about hair on his face and head and to the fact that
no one mentioned his gold teeth. Also, three of his relatives testified that he was with them in
Dallas on the day of the robbery. They, however, had not made the police aware of his alibi prior
to trial.
      The jury heard all the witnesses and had to decide which were more credible. By their
verdict, they believed the victims. We must defer to the jury’s determination. Goodman, 66
S.W.3d at 287; Chambers, 805 S.W.2d at 461. The only physical evidence, the money orders,
points to Parker’s guilt. Viewing all the evidence without the prism of the “in the light most
favorable to the prosecution” construct, the evidence does not demonstrate that the proof of guilt
is so obviously weak as to undermine confidence in the jury’s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson, 23 S.W.3d
at 11.
      We overrule issue two.
Issue 3: Jury Charge Submission 
      In the charge for the penalty phase, the trial court included verbatim the required instruction
in article 37.07, section 4(a) of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann.
art. 37.07, § 4(a) (Vernon Supp. 2003). The instruction informs the jury, inter alia, about the
existence of good conduct time and parole and generally how they apply to the case. There is no
mention of “mandatory supervision.” 
      The nature of Parker’s complaint about the instruction arises out of the parole and “mandatory
supervision” laws. Tex. Gov’t Code Ann. ch. 508 (Vernon 1998 & Supp. 2003) (“Parole and
Mandatory Supervision”).


 The date a particular inmate becomes eligible for parole varies
depending on the offense of conviction, whether there is an entry in the judgment that a deadly
weapon was used, and, in some cases, the accumulation of good conduct time. Id. § 508.145(d). 
Based on these factors, Parker will be eligible for parole when he has served the lesser of thirty
years or one-half his sentence, and good conduct time is not to be considered in that calculation. 
Id. If an inmate is not released on parole, he may be released on “mandatory supervision” when
his actual time served plus good conduct time equals his sentence. Id. §§ 508.147, 508.149(b)
(Vernon 1998 & Supp. 2003). But, for certain crimes, including aggravated robbery, or when
there is an entry in the judgment that a deadly weapon was used, “mandatory supervision” is not
available, and so the accumulation of good conduct time becomes irrelevant. Id. § 508.149(a)
(Vernon Supp. 2003). Parker is not eligible for “mandatory supervision” because of his
crime—aggravated robbery. Id. Thus, good conduct time has no bearing on Parker’s release date
under either parole or “mandatory supervision.” Yet the charge instructed the jury that he “may
earn time off the period of incarceration through the award of good conduct time,” thereby
implying that it had some bearing on his release date. He claims the instruction is erroneous in
his case and so the statute requiring it violates his due process rights. His is an “as applied”
challenge, not a facial challenge.



      Courts of appeals have considered this issue, and the overwhelming majority concluded that
it is not error to give the instruction from section 4(a). E.g. Alawad v. State, 57 S.W.3d 24, 26
(Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); Martinez v. State, 969 S.W.2d 497, 501 (Tex.
App.—Austin 1998, no pet.); Garcia v. State, 911 S.W.2d 866, 869 (Tex. App.—El Paso 1995,
no pet.). The court of appeals in Jimenez v. State, however, found that the charge instruction was
erroneous. Jimenez v. State, 992 S.W.2d 633, 638 (Tex. App.—Houston [1st Dist.] 1999), aff’d,
32 S.W.2d 233 (Tex. Crim. App. 2000). The Jimenez court cited our opinion in Green v. State,
839 S.W.2d 935, 946 (Tex. App.—Waco 1992, pet. ref’d). But in Green, we assumed error
without so finding and conducted a harm analysis. Therefore, we have not decided the issue.
      Jimenez was reviewed by the Court of Criminal Appeals. Jimenez v. State, 32 S.W.2d 233
(Tex. Crim. App. 2000). The Court assumed error as we did in Green and addressed the issue
of what harm analysis was proper. The Court refused to address the ultimate question of whether,
in this situation, the charge is erroneous. The Court had previously held that section 4(a) is not
facially unconstitutional. In Muhammad v. State, the Court reiterated that section 4(a) does not
violate the due course of law provisions in the Texas Constitution, and held that section 4(a) does
not violate the due process clause of the Fourteenth Amendment to the United States Constitution. 
Muhammad v. State, 830 S.W.2d 953, 954-56 (Tex. Crim. App. 1992).
      Recently, however, the Court addressed the issue, and held that there was no “as applied”
violation of due process under either the Texas or federal constitutions. Luquis v. State, 72
S.W.3d 355, 364-65 (Tex. Crim. App. 2002). The charge in Luquis, as in the present case,
recited the statute, and stated in part:
      •    “[T]he defendant . . . may earn time off the period of incarceration imposed through the
award of good conduct time.”
 
      •    “It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.”
 
      •    This defendant “will not become eligible for parole until the actual time served equals
one-half of the sentence imposed or 30 years, whichever is less, without consideration
of any good conduct time he may earn. . . . Eligibility for parole does not guarantee that
parole will be granted.” 
 
      •    “It cannot accurately be predicted how the parole law and good conduct time might be
applied to this defendant . . . , because the application of these laws will depend on
decisions made by prison and parole authorities.” 
 
      •    “You may consider the existence of the parole law and good conduct time. However,
you are not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant. You are not to consider the manner in which the
parole law may be applied to this particular defendant.” 
“Mandatory supervision” is not mentioned. The Court considered: (1) the instruction in the
context of the entire charge; (2) whether the record showed that the jury discussed, considered,
or attempted to apply what they were told about good conduct time and parole; (3) that the record
did not give any indication, such as a jury note, that the jury was confused about the possible
application of good conduct time in the case; and (4) the punishment the jury assessed. Id. at 366-67. In addition, the Court relied on the principle that a reviewing court may assume the jury
followed the instructions in the charge. Id. at 366 (citing Williams v. State, 937 S.W.2d 479, 490
(Tex. Crim. App. 1996)). The Court concluded that Luquis had not demonstrated that the
instruction was “calculated to mislead this jury or that there is a reasonable probability that it did
mislead this jury.” Id. at 367. Therefore, it was not error to submit the instruction, and the
submission did not violate due process. Id. at 368.
      Applying the Luquis factors to the record and charge in this case, we find no demonstration
of a violation of due process “as applied.” We overrule issue three.
Issue 4: Ineffective Assistance of Counsel
      Because the charge on parole and good conduct time was not erroneous, Parker’s counsel
cannot have been ineffective for not objecting to it. We overrule issue four.
Issue 5: Deadly Weapon Finding
      Finally, Parker complains that the trial court’s entry of a “deadly weapon” finding in the
judgment was erroneous, because he was convicted under the law of parties, and therefore a
special issue on the use of a “deadly weapon” should have been given in the guilt-innocence
charge.
      The indictment alleges that Parker committed the robbery by using and exhibiting a deadly
weapon, to wit a firearm or a crowbar. The guilt-innocence charge instructed the jury (a) that an
aggravated robbery is a robbery committed by using or exhibiting a deadly weapon, and (b) on
the law of parties.


 The application paragraph instructed the jury that if Thurman used or
exhibited a deadly weapon, i.e., a firearm or crowbar, Parker could be found guilty if he had the
requisite intent and conduct under the law of parties. The verdict form asked if the jury found
Parker “guilty of the offense of Aggravated Robbery, as alleged in Count __ of the indictment.” 
(Five counts).
      The Code of Criminal Procedure requires that, when there is an “affirmative finding” by the
fact-finder that during the offense, “the defendant used or exhibited [a] deadly weapon or was a
party to the offense and knew that a deadly weapon would be used or exhibited,” the trial court
must enter that finding in the judgment, and if the deadly weapon is a firearm, that fact shall also
be entered. Tex. Code Crim. Proc. Ann. art. 42.12 § 3g(a)(2) (Vernon Supp. 2003); Polk v.
State, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985).
      When a jury is the finder of fact, the trial court’s determination of whether there is an
“affirmative finding” by the jury is not made by the trial court’s reviewing the evidence to discern
what the jury found. LaFleur v. State, 106 S.W.3d 91, 95 (Tex. Crim. App. 2003) (involving
conviction for a lesser-included offense). Rather, the “affirmative finding” may take any of the
following forms: (1) the indictment includes an allegation of a “deadly weapon,” and the verdict
states the defendant is guilty as charged in the indictment, (2) the indictment does not allege
“deadly weapon,” but does allege a weapon that is per se a deadly weapon, and the verdict states
the defendant is guilty as charged in the indictment, or (3) the jury has affirmatively answered a
special charge issue on “deadly weapon” use or exhibition. Id.; Polk, 693 S.W.2d at 396. 
Alternatively, if the application paragraph of the charge adequately describes the use or exhibition
of a deadly weapon, then the verdict of “guilty” combined with the application paragraph
constitute the “affirmative finding.” LaFleur, 106 S.W.3d at 98.
      In the present case, under “1” or “2" there was an “affirmative finding” by the jury. Tex.
Pen. Code Ann. § 1.07(a)(17)(A) (Vernon 2003) (a firearm is a deadly weapon). But Parker
argues that, because he was convicted under the law of parties, only “3" applies. Even if he is
correct that “1" and “2" do not apply, which we do not decide, his issue nevertheless fails under
LaFleur which approves of the “affirmative finding” based on the application paragraph and a
“guilty” verdict. The application paragraph here contained adequate references to the law of
parties, Thurman’s use of a deadly weapon, and what Parker knew of Thurman’s intent to use the
deadly weapon. That, combined with a “guilty” verdict, supports the entry of the “affirmative
finding.” In addition, the Houston courts have impliedly rejected Parker’s argument by affirming
the entry of an “affirmative finding” in “law-of-the-parties” cases without a special charge issue. 
Sarmiento v. State, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d);
Johnson v. State, 6 S.W.3d 709, 714 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).
      Under the application paragraph and the verdict, the jury must necessarily have found that
Parker “was a party to the offense and knew that a deadly weapon would be used or exhibited.” 
We overrule issue five.
Conclusion
      Having overruled Parker’s five issues, we affirm the judgment.

                                                                   BILL VANCE
                                                                   Justice

Before Justice Vance,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed August 20, 2003
Publish
[CR25]