IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00328-CR

 

Gary Westbrook,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 87th District Court

Limestone County, Texas

Trial Court No. 04-102-CR

 



MEMORANDUM  Opinion



 








          A jury convicted Gary Westbrook of
possession of methamphetamine in the amount of one gram or more but less than
four grams.  Westbrook pleaded “true” to enhancement allegations, and the court
assessed his punishment at seventeen years’ imprisonment.  Westbrook contends
in his sole issue that the evidence is factually insufficient to prove that he
possessed the methamphetamine in question.  We will affirm.

Background

          Deputy Robert Willis stopped Westbrook,
who was leaving the residence of Charles Sikes, Jr., because Willis believed
that the window tinting in Westbrook’s pickup was too dark to comply with state
law.[1] 
Westbrook immediately exited the pickup and walked to the rear corner on the
driver’s side.  He paused there briefly before walking around to the
passenger’s side and meeting Willis at the front corner on that side.[2] 
Willis arrested Westbrook when he was unable to provide evidence of financial
responsibility.[3] 
Willis handcuffed Westbrook and during a search incident to the arrest found
one marihuana cigarette in Westbrook’s hand and another in his shirt pocket.

          Willis then noticed that Westbrook was
gesturing toward Sikes, whose Suburban was parked between twenty and thirty
feet behind Westbrook’s pickup.  Willis interpreted Westbrook’s gestures to be
an indication that Sikes should walk to the back of the pickup because Willis
“figured Mr. Westbrook had dropped something” there.  Willis told Sikes to “get
back” by the Suburban, then Willis began to search the interior of the pickup.

          Willis kept both Westbrook and Sikes
in sight as he searched the pickup.  He noticed that Westbrook nodded “to Mr.
Sikes towards the back of the truck” and pointed to the back of the pickup. 
Sikes then began to slowly walk toward the back of the pickup.  When he got
within ten feet of the pickup, he looked at Westbrook and nodded.  Willis
exited the pickup and approached Sikes.

          Willis testified that he had Sikes’s
hands in sight during this entire encounter and that Sikes never dropped
anything on the ground as he approached the pickup.  Willis then discovered a
small plastic container on the ground at the rear of the pickup in the area
where Westbrook had paused when he first exited the pickup.  In this container
were four small baggies containing what was later determined to be 1.56 grams
of methamphetamine.

          Willis’s in-car video camera recorded
Westbrook’s furtive gestures toward Sikes, and Willis called those to the
jury’s attention as the video was played.  While observing Westbrook’s actions
as depicted in the video, Willis commented that he had never seen Westbrook
“that nervous before.”[4] 
Willis also testified that the canister was dry when he recovered it, even
though it had recently rained.

          Willis testified that Sikes was also
“real nervous.”  During a search of Sikes’s Suburban, Willis found an
additional quantity of methamphetamine.

          On cross-examination, Willis conceded
that he did not see Westbrook drop anything at the rear of the pickup.  Willis
also conceded that he did not maintain “continual observation” of both
Westbrook and Sikes because one was in front of the pickup and one was behind
it.  He did not try to obtain any fingerprint evidence from the canister he
recovered.

          After the State rested, Westbrook
called Sikes who testified that the canister containing methamphetamine belonged
to him and that he had dropped it at the rear of Westbrook’s pickup.  On
cross-examination, Sikes testified that he could not recall how many baggies of
methamphetamine were in the canister.  He testified that he had the canister in
his hand as he was approaching Westbrook’s pickup and dropped it when he saw
Willis approaching him.

          Sikes also testified on
cross-examination that he had the canister in his pocket when he went to a
neighbor’s house to get some water for Westbrook—after Westbrook was arrested. 
He stated that he gave Westbrook the glass of water while he still had the
canister in his pocket, then walked to the rear of the pickup and dropped it.

Affirmative Links

          Westbrook contends in his sole issue
that the evidence is factually insufficient to prove that he possessed the
canister recovered from the rear of his pickup because the State failed to
offer sufficient “affirmative links” to connect him to the canister.

          The evidence can be factually
insufficient if the evidence supporting the verdict is “too weak to support the
finding of guilt” or if the contrary evidence is so strong “that the
beyond-a-reasonable-doubt standard could not have been met.”  See Zuniga v.
State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

                   “Affirmative links” is a
shorthand expression to identify what must be proven in a prosecution for the
possession of illegal drugs.  Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995).  An accused must not only have exercised actual care, control, or
custody of the substance, but must also have been conscious of [his] connection
with it and have known what it was.  Evidence which affirmatively links [him]
to it suffices for proof that [he] possessed it knowingly.  Id.  This
evidence may be direct or circumstantial.  Id.  In either case it must
establish, to the requisite level of confidence, that the accused’s connection
with the drug was more than just fortuitous.  Id.  This is the whole of
the so-called “affirmative links” rule.  Id.  It is still, just as it
always was, only a shorthand expression of what must be proven to establish
that a person possessed some kind of drug “knowingly or intentionally.”  Id.

 

Hunter v. State, 92 S.W.3d 596, 600 (Tex. App.—Waco 2002, pet.
ref’d).

          Here, the evidence shows that Westbrook
paused at the rear of his pickup in the location where Willis found the
canister moments later.  Westbrook had two marihuana cigarettes in his
possession when arrested, and he was uncharacteristically nervous.  Westbrook
also made a series of furtive gestures,[5]
testified to by Willis and corroborated by the video, which Willis interpreted
as an indication that Sikes should walk to the back of the pickup because
Willis “figured Mr. Westbrook had dropped something” there.  We cannot say that
this evidence is “too weak to support the finding of guilt.”  See Zuniga,
144 S.W.3d at 484; cf. Denbow v. State, 837 S.W.2d 235, 236-39 (Tex. App.—Dallas 1992, pet. ref’d) (insufficient affirmative links to connect defendant to
pill bottle containing methamphetamine found in parking lot near his
possessions because defendant did not have exclusive access to lot and evidence
did not exclude other reasonable hypotheses).[6]

          Sikes provided the lone controverting
evidence with his testimony that he placed the methamphetamine at the rear of
Westbrook’s pickup.[7] 
During cross-examination however, the State exposed numerous flaws and
inconsistencies in Sikes’s version of the events.  Thus, the jury had to choose
to believe either Sikes or Deputy Willis.

          Thus, the controverting evidence
rested on credibility.  The jury is the ultimate fact finder on issues of
credibility, and by its verdict, the jury chose to believe Willis.  See
Parker v. State, 119 S.W.3d 350, 355 (Tex. App.—Waco 2003, pet. ref’d).  We
must defer to the jury in its resolution of such issues.  Id.  Accordingly,
we cannot say that the controverting evidence is so strong “that the
beyond-a-reasonable-doubt standard could not have been met.”  See Zuniga,
144 S.W.3d at 485.

Therefore, we overrule Westbrook’s sole issue
and affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed October 26, 2005

Do not publish

[CR25]









[1]
          See Tex. Transp. Code Ann. § 547.613 (Vernon Supp. 2004–2005).

 





[2]
          When Westbrook saw Willis’s
marked vehicle approaching from the front, Westbrook stopped and began backing
up.  Thus, Willis was parked in front of Westbrook’s pickup when he stopped
Westbrook.

 





[3]
          Id. § 601.053 (Vernon 1999).





[4]
          Willis’s frame of reference for
Westbrook’s nervousness was Willis’s prior “contacts with him.”





[5]
          In this context, furtive
gestures have been defined as “an affirmative link between the accused and
drugs he attempts to hide or dispose of.”  Davila v. State, 749 S.W.2d 611,
613 (Tex. App.—Corpus Christi 1988, pet. ref’d) (citing Reyes v. State,
575 S.W.2d 38, 40 (Tex. Crim. App. [Panel Op.] 1979)).





[6]
          Denbow is distinguishable
for several reasons: (1) it employed the former “reasonable hypothesis
analytical construct” which the Court of Criminal Appeals has since rejected;
(2) the officer had not seen the area before the defendant stopped there and
could not say whether the pill bottle was there before they arrived; (3) the
defendant did not have any narcotics in his possession; (4) the record did not
indicate whether others were present at the time; and (5) there is no mention
that the defendant made any furtive gestures in connection with the pill
bottle.  See Denbow v. State, 837 S.W.2d 235, 238-39 (Tex. App.—Dallas 1992, pet. ref’d).

 





[7]
          Westbrook also makes reference
to the fact that Willis did not see him drop the plastic canister and that no
fingerprints were looked for on the canister.  However, these facts relate only
to the strength of the State’s case, and the absence of direct
eyewitness testimony from Willis or fingerprint evidence does not equate to the
existence of controverting evidence.








FootnoteReference>[1]  Tucker
v. State, 135 S.W.3d 920, 922-26 (Tex. App.—Amarillo 2004, no pet.).  The officer must also have a reasonable
suspicion, based on specific and articulable facts, that his safety or the
safety of others is in danger before he may conduct a limited search for
weapons.  Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000) (holding
that a weapons search is “only justified where the officer can point to
specific and articulable facts which reasonably lead him to conclude that the
suspect might possess a weapon”).  A
court looks to whether a reasonably prudent officer in the same circumstances
would be warranted in believing that his safety or the safety of others is in
danger.  Michigan v. Long, 463 U. S. 1032, 1050-51, 103 S. Ct. 3469, 3481-82, 77 L. Ed. 2d 1201 (1983); McCraw v. State, 117 S.W.3d 47, 55 (Tex.
App.—Fort Worth 2003, pet. ref’d).  The
subjective beliefs of the officer performing the search are not
determinative.  See O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

          The
State points to two facts that it says gave Bernard reasonable suspicion to
believe that Smithwick was potentially in possession of a weapon: the furtive[2]
gesture and Smithwick’s rapid exit from the vehicle.  Bernard testified that because Smithwick made
a furtive gesture, moving towards the passenger side of the vehicle before the
truck had completely pulled over to the shoulder of the road, he suspected that
Smithwick was attempting to hide something. 
When Smithwick attempted to exit the vehicle immediately upon stopping,
Bernard testified that he was suspicious that Smithwick wanted to keep Bernard
away from the vehicle and whatever he was attempting to hide there.  The videotape of the stop depicts both these
events as Bernard portrayed them in his testimony.

          Smithwick
argues that a furtive gesture alone is not sufficient to allow an officer to
reasonably believe that a detainee is dangerous and may possess a weapon.  By analogy he points to cases holding that a
furtive gesture alone is not probable cause to search a vehicle.  See
Howard v. State, 599 S.W.2d 597 (Tex. Crim. App. 1979); Jenkins v. State, 76 S.W.3d 709 (Tex.
App.—Corpus Christi 2002, pet. ref’d). 
However, there are numerous cases that hold that in the absence of a
furtive gesture, there is no reasonable suspicion to conduct a protective
search.  Tucker, 135 S.W.3d at 924;
McCraw, 117 S.W.3d at 55; In re
A.T.H., 106 S.W.3d 338, 347 (Tex. App.—Austin 2003, no pet.); Davis v.
State, 61 S.W.3d 94, 97 (Tex. App.—Amarillo 2001, no pet.).

          In
this case, there is not only a furtive gesture, but also a quick exit from the
vehicle that could have given a reasonably prudent officer reasonable suspicion
to believe that his safety was in danger. 
Carmouche, 10 S.W.3d at
329.  Therefore, we cannot say that the
trial court abused its discretion in denying Smithwick’s motion to suppress.  See
Maddox, 682 S.W.2d at 564.  Accordingly,
we overrule Smithwick’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

                                                                   FELIPE
REYNA

                                                                   Justice

 

Before Chief Justice Gray,

          Justice Vance, and 

          Justice Reyna

Affirmed

Opinion delivered and filed April
 20, 2005

Do not publish

[CR25]











[1]           The State argues that because Bernard was authorized to
arrest Smithwick on the traffic offense, the search of his vehicle was valid as
a search incident to an arrest.  However,
traffic stops are comparable to temporary detentions and not arrests.  See
Tucker v. State, 135 S.W.3d 920, 922-26 (Tex. App.—Amarillo 2004, no
pet.).  Accordingly, detaining a person
for a traffic offense alone does not entitle the officer to search the vehicle
as a search incident to an arrest.  Id.





[2]               “Furtive”
gestures are generally defined as those which are surreptitious, underhanded,
or done by stealth.  Webster’s Collegiate
Dictionary 474 (10th ed., Merriam-Webster, Inc. 1993).