IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00284-CR

 

Doran W. Walker,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 18th District Court

Johnson County, Texas

Trial Court No. F37351

 



MEMORANDUM  Opinion



 








          A jury convicted Doran Walker of six
offenses involving sexual acts with his adopted daughter.  The jury assessed
his punishment at fifteen years’ imprisonment for five of the counts (sexual
assault and indecency with a child) and twenty years’ imprisonment and a
$10,000 fine for the remaining count (sexual assault).  Walker contends in
three points that: (1) his convictions “are against the great weight and
preponderance of the evidence” on the issue of identity; (2) the evidence is
factually insufficient to prove identity; and (3) the trial court improperly
permitted the prosecutor to explain during punishment argument how parole law
would affect Walker’s sentences.  We will affirm.

Factual Insufficiency

          We construe Walker’s first and second
points to both challenge the factual sufficiency[1] of
the evidence to prove identity.[2]

          When reviewing a factually
insufficiency complaint, we ask whether the evidence supporting the verdict is
“too weak to support the finding of guilt beyond a reasonable doubt” or whether
the contrary evidence is so strong “that the beyond-a-reasonable-doubt standard
could not have been met.”  See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

          Here, the complainant identified Walker in court as the person who committed each of the crimes alleged.  The State
introduced evidence that specimens taken from the complainant’s vaginal area
and from her panties contained DNA which matched Walker’s DNA profile.  The
probability that these specimens could have come from some other person was 1
in 1 trillion.[3]

          Nevertheless, another witness
testified that Walker’s girlfriend sometimes took panties from the
complainant’s drawer, wore them, and then returned them to the drawer without
laundering them.  Thus, Walker contends there is evidence that the DNA taken
from the complainant and her panties actually got there because of his sexual
relations with his girlfriend.

          Walker also notes that not all of the
specimens obtained during the complainant’s rape examination were tested. 
There were other specimens which could not have been “contaminated” by his
girlfriend’s use of the complainant’s panties but were not tested.

          Finally, Walker points to testimony
that the complainant “hated” him and “would do anything to get away from him or
to get rid of him.”

          The complainant’s testimony, standing
alone, is sufficient to uphold the jury’s verdict on the issue of identity.  See,
e.g., Botley v. State, 102 S.W.3d 265, 267 (Tex. App.—Beaumont 2003, no
pet.).  The DNA evidence, standing alone, is also sufficient to prove identity.
 See, e.g., Roberson v. State, 16 S.W.3d 156, 171-72 (Tex. App.—Austin
2000, pet. ref’d).  

          The issues identified by Walker largely concern credibility.  The jury is the ultimate fact finder on issues of
credibility, and by its verdict, the jury chose to believe the State’s version
of the events.  See Parker v. State, 119 S.W.3d 350, 355 (Tex.App.—Waco
2003, pet. ref’d).  We must defer to the jury in its resolution of such
issues.  Id.  Thus, we cannot say that the controverting evidence is so
strong “that the beyond-a-reasonable-doubt standard could not have been met.”  See
Zuniga, 144 S.W.3d at 484-85.

          Accordingly, we overrule Walker’s first and second points.

Jury Argument

          Walker contends in his third point
that the trial court improperly permitted the prosecutor to explain during
punishment argument how parole law would affect Walker’s sentences.  However, because
 Walker did not object to the complained-of argument, he has not preserved
this issue for appellate review.  See Tex.
R. App. P. 33.1(a)(1); Bible v. State, 162 S.W.3d 234, 248 (Tex. Crim. App. 2005).  Accordingly, we overrule Walker’s third point.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 9, 2006

Do not publish

[CRPM]

 









[1]
          Walker contends in his first
point that his convictions “are against the great weight and preponderance of
the evidence.”  This “great-weight-and-preponderance” terminology comes from
civil appellate law and appeared in early decisions implementing factual
sufficiency review in criminal appeals.  See Zuniga v. State, 144 S.W.3d
477, 482-84 (Tex. Crim. App. 2004).  However, this terminology has no place in
criminal appellate law except where a party at trial had the burden to prove an
issue by a preponderance of the evidence.  Id. at 483-84; see, e.g.,
Meraz v. State, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990) (rejection of
affirmative defense reviewed to determine whether the verdict “is so against
the great weight and preponderance of the evidence as to be manifestly
unjust”).

 





[2]
          Walker’s brief does not clearly
state which elements of the State’s case he is challenging.  See Turner v.
State, 4 S.W.3d 74, 80-81 (Tex. App.—Waco 1999, no pet.); see also Perez
v. State, 113 S.W.3d 819, 837-39 (Tex. App.—Austin 2003, pet. ref’d); Gallegos
v. State, 76 S.W.3d 224, 228 (Tex. App.—Dallas 2002, pet. ref’d). 
Nevertheless, because his first and second points focus on the probative value
of the State’s DNA evidence, we construe these points as challenging the
element of identity.

 





[3]
          More precisely, the
probabilities were 1:1 trillion for another Caucasian, 1:61 trillion for an
African American, and 1:5.8 trillion for a Southwest Hispanic.








ppearance. Tex. R. Civ. P. 120a, § 1;
122.
      In general, moreover, parties who are before the trial court by virtue of their answer or
appearance are deemed to have notice of amended pleadings. See Burrow v. Arce, 997 S.W.2d
229, 246 (Tex. 1999); Reyman v. Reyman, 308 S.W.2d 595, 598 (Tex. Civ. App.—Waco 1957,
writ dism’d). However, if an amended petition sets up a new cause of action or seeks a more
onerous judgment than the original petition, then a defendant who has been served by citation but
has not answered must be served by new citation with the amended petition. Arce v. Burrow, 958
S.W.2d 239, 257 (Tex. App.—Houston [14th Dist.] 1997, rev’d in part, 997 S.W.2d 229; Baten
Erection Corp. v. Iron Workers’ Pension Trust Fund, 608 S.W.2d 262, 263-64 (Tex. Civ.
App.—Houston [1st Dist.] 1980, no writ); but see In re R.D.C., 912 S.W.2d 854, 856 (Tex.
App.—Eastland 1995, no writ) (Tex. R. Civ. P. 21 permits service of amended petition as
provided in Tex. R. Civ. P. 21a). Such amendments that do not alter the plaintiff’s grounds of
recovery “have little potential for surprising” the defendant. Shook v. Republic Nat’l Bank, 627
S.W.2d 741, 750 (Tex. Civ. App.—Tyler 1981), rev’d on other grounds sub nom. RepublicBank
Dallas v. Shook, 653 S.W.2d 278 (Tex. 1983).
      In general, a plaintiff may take a default judgment against a defendant who fails to file an
answer within the time allowed and fails to appear when the trial court calls the cause for trial. 
Tex. R. Civ. P. 99, 237-239. A defendant who neither answers nor appears has “‘admitted’ the
facts properly pled and the justice of the opponent’s claim.” Stoner v. Thompson, 578 S.W.2d
679, 682 (Tex. 1979).
      Strictly speaking, a judgment rendered against a defendant who appears but does not file an
answer is not a Rule 239 default judgment, but a judgment nihil dicit. Nihil dicit literally means
“he says nothing,” that is, “defendant says nothing.” Frymire Eng. Co. v. Grantham, 524 S.W.2d
680, 680 (Tex. 1975) (per curiam); Black’s Law Dictionary 1067 (7th ed. 1999). A defendant
who appears, but does not put the merits of the plaintiff’s case at issue, is subject to judgment nihil
dicit. Stoner, 578 S.W.2d at 683. This situation may arise when the defendant either makes a
dilatory plea without filing an answer, or withdraws its answer. Frymire Eng. Co. at 681. A
judgment nihil dicit is, in its effect, similar to a no-answer default judgment. Stoner at 682. 
However, a judgment nihil dicit “carries an even stronger confession than the default judgment.” 
Id. The submission to a judgment nihil dicit “is an abandonment of every known defense or any
defense which ordinary diligence could have disclosed.” O’Quinn v. Tate, 187 S.W.2d 241, 245
(Tex. Civ. App. 1945, writ ref’d) (quoting 25 Tex. Jur. § 53 at 420 (current version at 47 Tex.
Jur. 3d Judgments § 61 (1998))); Guar. Bank v. Thompson, 619 S.W.2d 217, 220 (Tex. Civ.
App.—Waco 1981) (quoting O’Quinn), rev’d on other grounds, 632 S.W.2d 338 (Tex. 1982). 
In particular, a judgment nihil dicit “imports a waiver of all objections to the service and return
of process.” Id.
      The judgments of which Brian complains adjudicate both a petition to modify the divorce
decree and a suit for damages. See Tex. Fam. Code Ann. chs. 42, 156 (Vernon 2002). A
petition to modify an existing order affecting the parent-child relationship is a new suit. Id.
§ 156.004; Normand v. Fox, 940 S.W.2d 401, 403 (Tex. App.—Waco 1997, no writ). Thus,
persons whose rights or duties may be affected by a petition to modify are entitled to service by
citation. Tex. Fam. Code Ann. § 156.003. A motion to modify an existing judgment, which is
erroneously filed in the same cause as the existing judgment, is nonetheless effective to commence
a new suit. Curtis v. Gibbs, 511 S.W.2d 263, 268 (Tex. 1974) (orig. proceeding).
      A motion to enforce an existing judgment, on the other hand, is generally not a new suit. See
N.J. Bank v. Knuckley, 637 S.W.2d 920, 921 (Tex. 1982). A motion to enforce a final order in
a suit involving the parent-child relationship may, however, become a new suit. See Tex. Fam.
Code Ann. ch. 157 (Vernon 2002). If a motion for enforcement of an order in a suit affecting
the parent-child relationship is joined with another claim, the motion becomes a new suit. Id.
§ 157.062(d). And a movant may join a motion for enforcement with “any claim or remedy”
provided for in suits affecting the parent-child relationship “or other rules of law.” Id.
§ 157.003(a). Thus, Section 157.003 “liberally provides for joinder of claims in a suit affecting
the parent-child relationship.” Barrientos v. Nava, 94 S.W.3d 270, 277 (Tex. App.—Houston
[14th Dist.] 2002, no pet.).
      When a proceeding in a suit affecting the parent-child relationship is statutorily designated as
a new suit, a determination of that proceeding is a final order that is appealable. See Bilyeu v.
Bilyeu, 86 S.W.3d 278, 282 (Tex. App.—Austin 2002, no pet.).
FACTUAL BACKGROUND
      In November, 1999, Brian and Virginia Rose were divorced in Texas. Their marriage had
produced two children, T. C. R. and H. M. R. In the final divorce decree, the trial court
appointed the Roses joint managing conservators of the children, and entered a standard possession
order. See Tex. Fam. Code Ann. §§ 153.311-153.317 (Vernon 2002). The decree designated
Brian as the parent having the exclusive right to establish the primary residence of H. M. R., and
gave Virginia the exclusive right to establish the primary residence of T. C. R. See id.
§ 153.134(b) (Vernon 2002). At the time of the divorce, Brian resided in Bossier City, Louisiana,
and Virginia resided in Bardwell, Texas. The decree designates a location in Tyler, Texas, where
the Roses were to meet to surrender possession of the children to each other.
      In March, 2000, Brian moved to England in connection with his military service, and took
H. M. R. with him.
      In December, 2000, Virginia commenced a suit for modification of the divorce decree by
filing an original petition to modify the parent-child relationship. Virginia petitioned the court to
appoint her sole managing conservator of both children, and to designate her as the parent having
the exclusive right to establish the primary residence of both children. The original petition did
not use Brian’s proper name, but referred to him only as “Respondent.” Virginia moved for, and
the trial court granted, personal service on Brian at his parents’ house in Ohio by private process
server. See Tex. R. Civ. P. 103.
      On December 18, the process server personally served Brian by citation with a copy of the
petition to modify, and personally served him with an order to appear at a hearing on the petition.
      On January 2, 2001, the trial court held a hearing on the petition to modify. At that time, the
record did not show that Brian had been served. Virginia’s attorney testified that Brian had been
personally served with the petition and order to appear, and that Brian had called the attorney to
say that he could not attend the hearing. The trial court withheld ruling pending proof of service
on Brian, but stated that it would grant Virginia’s petition on proof of service.
      On January 9, Virginia filed proof of service of the petition to modify and order to appear.
      On January 11, Brian filed a special appearance. See Tex. R. Civ. P. 120a. Subject to his
special appearance, Brian filed a motion to quash service, motion to dismiss for lack of exclusive
continuing jurisdiction, motion to strike the petition, motion to abate, plea of forum non
conveniens, motion for new trial, motion for sanctions, and motion for attorney’s fees.
      On January 24, the trial court held a hearing, at which Brian appeared by counsel.
      On March 20, the trial court ruled on Brian’s pleadings. The court found that it had
jurisdiction over Brian, based on Brian’s personal appearance in the divorce proceeding. The
court granted a new hearing on the “issues covered in the January 2, 2001, hearing.” The court
also ordered Virginia to amend her petition to modify to name Brian as the respondent, and to
serve the amended petition on Brian.
      On March 30, Virginia filed her second amended petition to modify and her original motion
for enforcement and for damages. The amended petition to modify stated Brian’s proper name and
corrected his address. The motion for damages alleged that Brian had interfered with Virginia’s
visitation with H. M. R. on some twenty-seven occasions. Virginia attempted service of the
petition and motion on Brian by certified mail to England. On April 9, Virginia’s attempted
services were returned for incomplete or incorrect addresses, or for the failure to use the correct
United States Postal Service form for international certified mail.
      On April 19, Virginia moved for, and the trial court granted, alternative service of the petition
and motion by personal service on Brian at his parents’ home in Ohio. See Tex. R. Civ. P. 106. 
On April 26 and 28, process servers attempted to serve Brian there, but were unable to do so.
      On May 9, Virginia moved for, and the trial court granted, alternative service of the petition
and motion on Brian by attaching them to the door of his parents’ house.
      On May 31, Virginia filed copies of citations for her second amended petition to modify and
her original motion for enforcement. The process server’s affidavit states that he had taped a copy
of the motion for enforcement on the door of Brian’s parents’ house on May 15. The affidavit
does not state that the process server attached a copy of the second amended petition for
modification to the door.
      On June 12, Virginia filed her first amended motion for enforcement and for damages. The
amended motion stated the dates of Brian’s alleged violations of the possession order differently
than did the original motion. The Clerk’s Record does not show service of the amended motion
on Brian.
      On June 13, the trial court held a hearing on Virginia’s petition to modify and motion for
enforcement and for damages. At the hearing, Brian appeared by counsel to challenge again the
court’s personal jurisdiction over him and to challenge his amenability to default judgment under
the Soldiers’ and Sailors’ Civil Relief Act. See 50 U.S.C.A. app. §§ 501-594 (1990 & Supp.
2003). After the trial court overruled those pleas, Brian’s counsel informed the court that she did
not represent Brian on the motion for enforcement and damages, and apparently withdrew from
counsel’s table.
      The court rendered judgment for Virginia. See Tex. Fam. Code Ann. § 101.026 (Vernon
2002). The court designated Virginia as the parent having the exclusive right to establish the
primary residence of both children. The court also awarded Virginia $15,550 for Brian’s
interference with Virginia’s visitation with H. M. R.
      On June 20, 2001, the trial court signed the Nunc pro Tunc Order in Suit to Modify Parent-Child Relationship and for Damages under Chapter 42 of the Texas Family Code, of which Brian
complains.
      In July, Virginia filed an amended affidavit from the process server, which stated that he had
attached copies of both the second amended petition to modify and the original motion for
enforcement on the door of Brian’s parents’ home on May 15. See Tex. R. Civ. P. 118.
APPLICATION
Modification Suit
      In Brian’s first issue, he argues that the record does not show that he was served with citation
in the suit for modification, and thus contends that the modification judgment is void. To the
extent that the trial court’s order nunc pro tunc adjudicated Virginia’s second amended petition
to modify, the order is a judgment nihil dicit. By submitting to such a judgment, Brian waived
any complaint concerning service. In any case, the record shows that Brian was served by
citation.
      Brian appeared in the modification suit. Brian filed a special appearance and a motion to
quash the service of Virginia’s original petition. The overruling of the special appearance and
motion to quash resulted in Brian’s general appearance before the trial court. Moreover, Brian’s
voluntary invocation of the trial court’s jurisdiction, by filing his plea in abatement, plea of forum
non conveniens, and motion for sanctions, effected a general appearance. Further, Brian appeared
by counsel at the final hearing on the second amended petition to modify.
      Having appeared, however, Brian did not file an answer. Without putting the merits of
Virginia’s cause of action at issue, Brian submitted himself to a judgment nihil dicit. See
O’Quinn, 187 S.W.2d at 245; Guar. Bank, 619 S.W.2d at 220. Brian thus effectively confessed
judgment, and waived any complaint concerning service of citation. See id.
      Thus, Brian’s first issue is overruled. 
Suit for Damages
      In Brian’s second issue, he argues that the record does not show that he was served by citation
with the first amended motion for enforcement and for damages, and thus contends that the
judgment for damages is void.


 To the extent that the trial court’s order nunc pro tunc adjudicates
Virginia’s motion for damages, the order is a no-answer default judgment. Virginia need not have
served Brian with her amended motion, since that motion did not seek a more onerous judgment
than her original motion.
      The record shows, and Brian concedes, that Virginia served Brian with her original motion
for enforcement and for damages. Brian did not file an answer in the suit for damages. Nor did
he appear in that suit. Indeed, the record does not disclose any pleadings filed by Brian after his
service with the original motion. At the final hearing, moreover, Brian’s counsel scrupulously
avoided entering an appearance for him on the enforcement motion.
      A plaintiff must serve a non-answering defendant with amended pleadings only when the
amended pleading sets up a new cause of action or seeks a more onerous judgment against the
defendant. Virginia’s amended motion, to the contrary, merely corrects the dates in her
allegations.
      Brian cites Caprock Construction Co. v. Guaranteed Floorcovering, Inc., for the proposition
that a judgment “is void when it is based on an amended pleading which was not served on the
opposing party.” See Caprock Constr. Co. v. Guaranteed Floorcovering, Inc., 950 S.W.2d 203,
204-205 (Tex. App.—Dallas 1997, no writ). This overstates Caprock Construction’s holding. 
Caprock Construction follows the general rule that an amended petition that seeks a more onerous
judgment requires new service. See Palomin v. Zarsky Lumber Co., 26 S.W.3d 690, 694 (Tex.
App.—Corpus Christi 2000, pet. denied). The amended petition in Caprock Construction added
a new plaintiff and thus “exposed [the defendant] to additional liability.” Caprock Constr. at 205. 
The instant cause does not fall within that rule, since Virginia’s amended motion for damages did
not seek a more onerous judgment.
      Thus, the alleged failure of proof of service of the amended motion for damages does not
render the judgment for damages void. Brian’s second issue is overruled.CONCLUSION
      Having overruled Brian Rose’s issues, we affirm the trial court’s judgments. 
 
                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 1, 2003
[CV06]